Hart, J.
 

 Since the plaintiff was a guest of defendant Earl Diamond, to warrant a recovery against him it was necessary for her to establish, under the guest statute, Section 6308-6, General Code, wilful or wanton misconduct on the part of such defendant.
 

 
 *523
 
 The plaintiff also seeks to recover against defendant Samuel J. Diamond because he had joined with his son in the latter’s application for a minor automobile operators license under the Ohio minor automobile operators responsibility statute, Section 6296-10, General Code.
 

 That section provides in part as follows:
 

 “(a) The registrar shall not grant the application of any minor under 18 years of age for an operator’s or chauffeur’s license unless such application is signed by either parent, guardian or other person having custody of the applicant, or in the event there is no parent or guardian then by a responsible person who is willing to assume the obligation imposed under this act.
 

 “ (b)
 
 Any negligence or wilful misconduct
 
 of a min- or under 18 years of age when driving a motor vehicle upon a highway shall be imputed to the person who has -signed the application of such minor, which person shall be jointly and severally liable' with such minor for any damages caused by such negligence or wilful misconduct * * (Italics supplied.)
 

 To create liability against defendant Samuel J. Diamond, under the statute just quoted, it was necessary for the plaintiff to show that Earl Diamond, in the operation of the automobile on the occasion in question, was guilty of “negligence” or “wilful misconduct.” But, since the establishing of mere negligence against Earl Diamond could not satisfy the liability requirements of the guest statute, and the establishing of “wanton misconduct” alone could not create liability against the father under the responsibility statute, the case was tried throughout by the court and the litigants on the theory that to recover a joint judgment against both defendants plaintiff must prove “wilful misconduct” on the part of Earl Diamond.
 

 
 *524
 
 The defendants in the Common Pleas Court, appellants in this court, insist that there was no evidence of wilful misconduct to warrant the submission of the case to the jury; that, at most, only negligence was shown which was insufficient to warrant a recovery; and that their, motion for a directed verdict should have been sustained.
 

 To determine this question, it is necessary for the court to define and apply to the facts in the instant case, the statutory term, “wilful misconduct,” or the word, “misconduct,” as described by the adjective,' “wilful,” construing such facts most favorably to th» defendants.
 

 Because of the great variety of terms, used in guest statutes of the several states of the United States, relating to the quality or degree of tortious conduct of an automobile host driver necessary to create liability against him in favor of his guest, and because of the careless use of language in court opinions and legal literature describing these terms, great confusion has arisen in the matter of applying them to specific cases. This confusion makes difficult the task of giving the proper interpretation and meaning to the term applicable to the guest statute in force in the jurisdiction of the trial forum. Among these terms so used are “wilful negligence,” “wilful tort,” “negligence,” “wanton misconduct” and.“wilful misconduct.”
 

 In order to make the conception of the term, “wilful misconduct,” applicable in this case, as clear as possible, it will be helpful, by definition, to segregate it from other related but differentiated meanings attributed to that term in the law of torts. This is especially important since the scope or limit of liability for such torts is predicated on these distinctions" and differences.
 

 The terms, “wanton negligence,” and, “wilful negligence,” sometimes used in court opinions and law
 
 *525
 
 texts, are complete misnomers. There is no such thing-as wanton or wilful negligence. In the opinion in the case of
 
 Payne, Dir. Genl. of Rds.,
 
 v.
 
 Vance,
 
 103 Ohio St., 59, 73, 133 N. E., 85, quoting from another case,, it is said: “ ‘To say that an injury resulted from the negligent and wilful conduct of another, is to affirm that the same act is the result of two exactly opposite mental conditions. It is to affirm in one, breath that an act was done through inattention, thoughtlessly, heedlessly, and at the same time purposely and by design.’ ”
 

 The term, “wilful tort,” implies an intent or purpose to injure. It is not synonymous with “wanton misconduct” or “wilful misconduct” as hereinafter defined. “Wilful tort” involves design, set purpose or intention to injure. It is not negligence.
 
 Denzer
 
 v.
 
 Terpstra,
 
 129 Ohio St., 1, 3, 193 N. E., 647;
 
 Reserve Trucking Co.
 
 v.
 
 Fairchild,
 
 128 Ohio St., 519, 191 N. E., 745;
 
 Payne, Dir. Genl. of Rds.,
 
 v.
 
 Vance, supra.
 
 In “wilful tort,” sometimes called “wilful injury,” there must be a design, purpose or intent not only to do wrong but to inflict injury.
 
 Rothman
 
 v.
 
 Metropolitan Casualty Ins. Co.,
 
 134 Ohio St., 241, 16 N. E. (2d), 417, 117 A. L. R., 1169.
 

 In the instant case we must determine whether the acts of Earl Diamond constituted mere negligence, wanton misconduct or wilful misconduct. The term, “negligence,” is synonymous" with heedlessness, thoughtlessness, inattention, inadvertence and oversight. Negligence conveys the idea of inadvertence as distinguished from premeditated or formed intention.
 
 Tompkins
 
 v.
 
 Pacific Mutual Life Ins. Co.,
 
 53 W. Va., 479, 44 S. E., 439. As long as the element of inadvertence remains in conduct it is not wilful.
 
 Rideout et al., Admrs.,
 
 v.
 
 Winnebago Traction Co.,
 
 123 Wis., 297, 101 N. W., 672. Negligence-and wilfulness aro mutually exclusive terms, implying radically different
 
 *526
 
 mental states.
 
 Gallegher
 
 v.
 
 Davis,
 
 183 A., 620;
 
 Anderson
 
 v.
 
 Commr. of Internal Revenue,
 
 81 F. (2d), 457, 104 A. L. R., 676. Negligence implies a failure to .comply with an indefinite rule of conduct in the circumstances of any particular case. It does not involve intent or a conscious purpose to do a wrongful act or to omit the performance of a duty. Intent, purpose or design need not be proven.
 
 Payne, Dir. Genl. of Rds.,
 
 v.
 
 Vance, supra.
 

 “Wanton misconduct” comprehends an entire absence of all care for the safety of others and an indifference to consequences.
 
 Higbee Co.
 
 v.
 
 Jackson,
 
 101 Ohio St., 75, 128 N. E., 61, 14 A. L. R., 131. It implies a failure to exercise any care toward, those to whom a duty of care, is owing when the probability that harm will result from such failure is great, and such probability is known to the actor. It is not necessary that an injury be intended or that there be any ill will on the part of the actor toward the person injured as a result of such conduct.
 
 Universal Concrete Pipe Co.
 
 v.
 
 Bassett,
 
 130 Ohio St., 567, 200 N. E., 843, 119 A. L. R., 646;
 
 Conchin
 
 v.
 
 El Paso & Southwestern Rd. Co.,
 
 13 Ariz., 259, 108 P., 260;
 
 Hiatt
 
 v.
 
 Northern Pacific Ry. Co.,
 
 138 Wash., 558, 244 P., 994. Wanton misconduct is positive in nature while mere negligence "is naturally negative in character.
 
 Universal Concrete Pipe Co.
 
 v.
 
 Bassett, supra.
 

 “Wilful misconduct” remains to be considered. Since under our guest statute negligence as a basis of recovery is excluded, the intent of the General Assembly in enacting it must have been to permit a recovery only in cases where the misconduct of the defendant is wilful or wanton as distinguished from negligent acts or acts of inadvertence. “Wilful misconduct” is something more than negligence. “Wilful misconduct” imports a more positive mental condition prompting an act than does the term “wanton mis
 
 *527
 
 conduct.” “Wilful misconduct” implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury.
 
 Princeton Coal Mining Co.
 
 v.
 
 Lawrence,
 
 176 Ind., 469;
 
 Meek, an Infant,
 
 v.
 
 Fowler,
 
 3 Cal. (2d), 420, 45 P. (2d), 194. See 2 Restatement of Torts, 1293, Section 500. The word, “wilful,” used in the phrase, “wilful misconduct,” implies intent, but the intention relates to the misconduct and not merely to the fact that some specific act, such as operating ,an automobile, was intentionally done.
 
 Howard
 
 v.
 
 Howard,
 
 132 Cal. App., 124, 22 P. (2d), 279;
 
 Halter
 
 v.
 
 Malone,
 
 11 Cal. App. (2d), 79, 53 P. (2d), 374. The intention relates to the commission of wrongful conduct, independent of the intent to use certain means with which to carry out such conduct.
 

 In order that one may be guilty of “wilful misconduct,” an actual intention to injure need not be shown.
 
 Bedwell
 
 v.
 
 DeBolt,
 
 221 Ind., 600, 50 N. E. (2d),
 
 875; Baines
 
 v.
 
 Collins,
 
 310 Mass., 523, 38 N. E. (2d), 626, 138 A. L. R., 1123. “Wilful misconduct” includes a wilful tort, or an intent to injure, but an intent to injure is not a necessary element. “Wilful misconduct” on the part of a motorist, within the contemplation of guest statutes similar to the Ohio guest statute, is either the doing of an act with specific intent to injure his passenger, or, with full knowledge of existing conditions, the intentional execution of a wrongful course of conduct which he knows should not be carried out or the intentional failure to do something which he knows should be done in connection with his operation of the automobile, under circumstances tending to disclose that the motorist knows or should know that an injury to his guest will be the probable result of
 
 *528
 
 such conduct.
 
 Provenzano
 
 v.
 
 Ill. Cent. Rd. Co.,
 
 357 Ill., 192, 191 N. E., 287, 288;
 
 Bedwell
 
 v.
 
 DeBolt, supra; Clarke, Admx.,
 
 v.
 
 Storchak,
 
 384 Ill., 564, 52 N. E .(2d), 229;
 
 Weaver
 
 v.
 
 Mark,
 
 112 F. (2d), 917;
 
 Conrad
 
 v.
 
 Wheelock,
 
 24 F. (2d), 996;
 
 Louisville & N. Rd. Co.
 
 v.
 
 Anchors, Admr.,
 
 114 Ala., 492, 22 So., 279, 62 Am. St. Rep., 116;
 
 Jackson
 
 v.
 
 Edwards,
 
 144 Fla., 187, 197 So., 333;
 
 Meek
 
 v.
 
 Fowler, supra; Mitrovich
 
 v.
 
 Pavlovich,
 
 61 Nev., 62, 114 P. (2d), 1084;
 
 Hoesel
 
 v.
 
 Cain,
 
 222 Ind., 330, 53 N. E. (2d), 165; 4 (pt. 1) Blashfield Cyclopedia of Automobile Law and Practice (Perm. Ed.), 380
 
 et seq.,
 
 Section 2322.
 

 . ‘ ‘ There is a constructive, intention as to the consequences, which, entering' into the wilful, intentional act, the law imputes to the offender, and in this way a charge which otherwise would be mere negligence, becomes, by reason of a reckless disregard of probable consequences, a wilful wrong.”
 
 Baines
 
 v.
 
 Collins,
 
 310 Mass., 523, 38 N. E. (2d), 626, 138 A. L. R., 1123.
 

 No question was raised as to any entrustment of the automobile to Earl Diamond by his father, or as to the capacity or lack of capacity of Earl Diamond to commit wilful misconduct in connection with the operation of the automobile, or as to any limitation of the liability of either defendant by reason of such capacity or lack of capacity. The trial court charged on the liability of the defendants in the terms of the statute under which any wilful misconduct of Earl Diamond in the operation of the automobile is imputed to the defendant Samuel J. Diamond, and no prejudicial error intervened on that account in the absence of a request for more specific instructions.
 

 The ultimate question in this easels whether, under ' 1 the facts and circumstances shown by the evidence, including the capacity and experience of the minor defendant, there was any evidence that the minor
 
 *529
 
 defendant was guilty of “wilful misconduct” which proximately caused the plaintiff’s injuries.
 

 Plaintiff’s evidence tended to prove the following facts:
 

 The road over which Earl Diamond operated his car on the night in question was a secondary road or highway surfaced with packed slag, gravel or crushed stone, with coarse loose material on the surface. Although the wheel tracks were smooth and solid, there was loose material between the wheel tracks and outward from them to the limits of the traveled portion of the road.
 

 Earl Diamond had driven over this hump on the highway on at least three previous occasions, the last time the ■ night before the accident in question, and had full knowledge of the road conditions on the highway. About eight o’clock, after dark, he motored down the highway advising his girl passengers, that he would give them a thrill. One of the girls protested to him, telling him he was driving too fast. He testified that his objective was to take the girls over the hump and give them a thrill; and that he intended • to go over it at a rate of speed which would throw the car up in the air somewhat. He drove over the hump at nearly 60 miles per hour. He admitted a speed of 50 miles per hour. As the car passed over the hump, the plaintiff and her girl companion hit the top of the car and both were rendered unconscious. The car, out of control, continued down the highway almost 500 feet where it turned over three times. Diamond admits that it turned over one and a fourth times. After striking and barking a tree, it came to ¡rest nearby on a lawn near the side of the road. The car was badly wrecked, the frame bent, the top battered in when it hit the embankment at the side of the road, the glass windows in front and rear and on the right side were broken and the steering wheel was broken. The car was never repaired. The plaintiff was severely in
 
 *530
 
 jured, suffering a compression fracture of the first lumbar vertebra, and remained in a cast for about six months.
 

 Under this state of the record, there is clear evidence that Earl Diamond deliberately and intentionally planned to rush over the hump in the road at a rate of 60 miles an hour and throw the car up in the air so that its leap and landing would give his passengers a thrill. Was this wilful misconduct? Undoubtedly, there was no intent to injure his passengers, or himself, but did he, from his age and experience, have the capacity to appraise his conduct and appreciate its consequences ? If so, was there an intent and purpose to carry out a scheme of conduct which was clearly wrong and which he should have recognized as violative of his duty necessary for the safety of the plaintiff as his passenger? 'Was his scheme of conduct such, as to make him conscious, from his knowledge of the existing conditions, that injury to the plaintiff would likely or probably result and did he, with such knowledge and consciousness and indifference to consequences, proceed to carry out such scheme of conduct? These questions, if reasonable minds could dif-fer as to their answers, were questions of fact,lying wholly within the province of the jury.
 

 In an action by an automobile ghest for personal injuries, the question whether the driver intentionally drove the automobile with wanton and reckless disregard of the possible results of such driving, or whether he intentionally drove the automobile with knowledge expressed or implied that serious injury would probably be the result thereof, is one of fact for the determination of the finder of the facts.
 
 Kennard, a Minor,
 
 v.
 
 Palmer, a Minor,
 
 143 Ohio St., 1, 53 N. E. (2d), 908.
 

 In the case of
 
 Bedwell
 
 v.
 
 DeBolt, supra,
 
 the defend
 
 *531
 
 ant motorist in the nighttime, without stopping, looking or slackening his speed, drove his automobile upon a railroad crossing, with which he was familiar, at the rate of 40 miles per hour when a locomotive was proceeding over the crossing at two miles per hour . and a flasher signal displaying red lights was in operation and clearly visible to him, resulting in a collision between his automobile and the locomotive and injury to his guest. The defendant was held guilty of “wilful misconduct.”
 

 We are of the opinion that the facts in the instant" ease warranted the submission to the jury the questjon whether the minor defendant was guilty of wilful misconduct, and that the trial court did not err in refusing to direct a verdict for the defendants.
 

 There were also errors claimed in connection with the charge of the court and with the. refusal of the court to grant defendants’ motion for a mistrial be- • cause of reference in plaintiff’s testimony to the subject of insurance. An examination of the record fails to disclose any prejudicial error in the charge. The reference to insurance was injected into the record in an effort on the part of counsel for the plaintiff to counteract the force of statements made by a witness for plaintiff in an application for insurance benefits, brought out by the cross-examination of counsel for the defendants, to impeach the witness in her testimony at the trial. No seasonable objection was made to such testimony, and on the whole record it does not appear that such alleged error was prejudicial.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Zimmerman, Sohngen and Stewart, JJ., concur.
 

 Turner, J., concurs in the judgment.