**LAWWILL, Plaintiff, v. KNISLEY, Defendant.**

Common Pleas Court, Fayette County.

No. 22152. Decided July 31, 1957.

Reed M. Winegardner, Washington C. H., Richard Huggard, Columbus, for plaintiff.

Junk & Junk, Washington C. H., for defendant.

## OPINION

By CASE, J.

This cause is before the court upon defendant's demurrer to plaintiff's amended petition herein.

Plaintiff's amended petition reads as follows:

"At all times hereinafter mentioned, Ohio State Route 70 was a public highway extending in a general northwesterly and southeasterly direction in and through the County of Fayette, State of Ohio.

"On or about August 8, 1954 at approximately 1:00 to 2:00 A. M., plaintiff was a passenger in an automobile owned and operated by defendant in a southeasterly direction on said Ohio Route 70, in Fayette County, northwest of Washington Court House, Ohio. As defendant at said time and place operated said automobile at a speed of approximately 75 miles per hour around and through a right hand curve in said road, he lost control thereof, and said automobile skidded partly off the road and upon the berm thereof. Although plaintiff thereupon protested to defendant about the speed at which said car was being operated and its manner of operation, defendant failed to heed said protest, accelerated the speed of said automobile, and drove it into and through a subsequent left hand curve. In driving around said second curve, defendant again lost control of said automobile and said automobile again skidded partly off the road and upon the berm thereof. Plaintiff renewed his protests as to the speed in which said automobile was being operated, and as to the defendant's manner of operation. Defendant, however, refused to heed said protests, laughed, and stated 'Oh, this buggy will stick to the road,' and on emerging from the said curve, further accelerated the speed of said automobile to approximately 85 miles per hour, plaintiff during said time continuing his said protests. Defendant then operated said automobile at a speed of 85 miles per hour, into a third right hand curve ignoring plaintiff's continuing protests. In attempting to make said curve, defendant lost control of his car completely, and said automobile skidded down said road in a southerly direction, crossed said road to defendant's left hand side thereof, left said road, went down in a ditch, emerged therefrom, and crashed through an iron picket fence enclosing a cemetery on the northerly side of said road, traveling, in all, since beginning to skid at said third curve, a distance of over 400 feet, throwing plaintiff about, in, and from said car and injuring him, as will be more particularly hereinafter set out. Prior to this occurrence, defendant had lived in said vicinity many years, and had traveled over said road and through said curve on numerous occasions.

"As a direct and proximate result of defendant's aforesaid wanton misconduct, plaintiff received an extensive laceration of the biceps region, requiring approximately fifty stitches in the repair thereof, a compound fracture of the right elbow, requiring surgery for its treatment and repair, a gash in his head, a cerebral concussion, an injury to his

back, the exact nature of which he is unable to state, multiple bruises, contusions and abrasions, and a severe nervous and physical shock. Said injuries required plaintiff to be hospitalized and to submit to treatment and medical attention for a period of approximately three months thereafter. Said injuries and the results thereof are permanent.

"In the treatment of said injuries, plaintiff has incurred medical, surgical and hospital expenses in the amount of Two Hundred Ninety Six and 49/100 ($296.49) Dollars, and plaintiff believes and avers that he will be obliged to incur further similar expenses in the future, the exact amount of which he is unable to state at this time.

"Prior to receiving said injuries, plaintiff was employed at the plant of Delco Products, Division of General Motors, Dayton, Ohio and earned from $75.00 to $100.00 per week. As a further direct and proximate result of defendant's aforesaid wanton misconduct, plaintiff lost thirty weeks' work and the earnings therefrom. Since returning to work, plaintiff has been unable to work in the manner or to the extent that he did before.

"By reason of the matters herein set out, plaintiff has been damaged in the sum of Fifty Thousand and no/100 ($50,000.00) Dollars.

"WHEREFORE, plaintiff prays that he may have judgment against defendant in the sum of Fifty Thousand and no/100 ($50,000.00) Dollars, together with his costs herein expended."

To the aforesaid amended petition, defendant filed the following demurrer and memorandum in support thereof:

"Now comes the defendant and demurs to the plaintiff's amended petition and for reason therefore says that the amended petition does not state facts sufficient in law to constitute a cause of action against this defendant."

"MEMORANDUM IN SUPPORT OF DEFENDANT'S DEMURRER

"Plaintiff in his petition alleges that he received certain injuries as a direct and proximate result of defendant's wanton misconduct. The law of Ohio seems to be well settled that when a plaintiff alleges that his recovery is based upon the willful or wanton misconduct of a defendant that he must allege facts that reveal on their face the element of wilfulness or wantonness, else such pleading is demurrable.

"Vecchio v. Vecchio, 131 Oh St 64, states: 'If wanton misconduct is relied upon for recovery in an action for damages for personal injury, facts must be pleaded which reveal on their face the element of wantonness.' See also the case of Davis, Appellant, v. Moor, et al., Appellees, 86 Oh Ap 213. Thus our next step is the definition in Ohio of wanton misconduct. The definition of wanton misconduct as approved by the Courts in the State of Ohio is as follows: 'Wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury.' This definition is set out in the case of Helleren, Admx., Appellee, v. Dixon, Appellant, 152 Oh St 46. From this definition it is apparent that one of

the elements in alleging 'wanton misconduct' is that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances were existing conditions, that his conduct will in all common probability result in injury. The allegations set out in plaintiff's amended petition herein clearly on their face do not meet that test, in fact plaintiff by his own allegations shows clearly that defendant believed that his conduct could not possibly result in any injury or damage. Plaintiff by his own allegations in lines 17 and 18 of the second paragraph of his amended petition alleges that defendant 'laughed, stating oh, this buggy will stick to the road.' Certainly these are not the remarks of a person who is conscious of any imminent danger. Thus plaintiff by his own allegations clearly does not bring this fact within the definition of wanton misconduct as defined and required by the law of Ohio, and therefore does not state a cause of action in this amended petition."

This court has studied and considered the opinion of Judge Stephenson in the Vecchio case, referred to in defendant's memorandum, and notes that the allegations and specifications of such petition therein with respect to the operative facts stated and set forth concerning the defendant being "wantonly negligent" are clearly distinguishable and substantially different in their character and appellation from the operative facts stated and referred to in plaintiff's amended petition herein as "wanton misconduct."

Sec. 2309.40 R. C., provides as follows:

"The allegations of a pleading shall be liberally construed, with a view to substantial justice between the parties."

In its repeated consideration of such statutory provisions, the Supreme Court of Ohio has held that as against demurrer a liberal construction of a petition in favor of the pleader is required, and, furthermore, that a court will indulge every reasonable inference, from the facts alleged, to sustain the petition. **Humphries v. Wheeling Steel Corp., 132 Oh St 263, 8 O. O. 38, 7 N. E. 2d 230; Gugle v. Loeser, 143 Oh St 362, 28 O. O. 318, 55 N. E. 2d 580.**

It is axiomatic that a demurrer to a petition admits, for the purpose of such demurrer, the truth of all allegations contained in said petition which are well pleaded, and in ruling upon such demurrer the court must assume the truth of such facts so pleaded in the petition (**Rittenhouse v. Holford, 75 Abs 138, 140 N. E 2d 84**); and that; "A pleading must be construed as an entirety, and effect given to every well-pleaded allegation," as stated by Judge Zimmerman in **Kennard v. Palmer, 143 Oh St 1**, at page 6.

Therefore, for the purpose of defendant's demurrer herein, the various speeds stated and the manner in which defendant's auto allegedly skidded at the respective curves together with the defendant's alleged continuous course of conduct over the alleged repeated protests of plaintiff, are all admitted by defendant's demurrer to be true. And, upon applying the liberal construction rule to said allegations and all other allegations of plaintiff's amended petition which are well pleaded, and upon indulging every reasonable inference from the operative facts

so alleged, this Court is confronted with the basic question of whether said amended petition states sufficient operative facts "to constitute a cause of action against this defendant."

In determining this question, the Court has studied and considered the authorities cited in defendant's memorandum, and has also considered Jenkins v. Sharp, 140 Oh St 80, 23 O. O. 295, 42 N. E. 2d 755, wherein the court held that the question of whether defendant was guilty of wanton misconduct within the meaning of the Guest Statute (§6308-6 GC; §4515.02 R. C.), is for the determination of the jury under instructions of the trial court.

In the Jenkins case, supra, beginning at page 83, Judge Williams states in part as follows:

"The inquiry here is somewhat narrowed and pertains to the respective rights and obligations of the operator of a motor vehicle moving forward on a public highway and a guest riding therein. With respect thereto the rule has been stated in Morrow v. Hume, Admx., supra, at page 324, in this manner: '* * * wantonness can never be predicated upon speed alone; but when the concomitant facts show an unusually dangerous situation and a consciousness on the part of the driver that his conduct will in common probability result in injury to another of whose dangerous position he is aware, and he drives on without any care whatever, and without slackening his speed, in utter heedlessness of the other person's jeopardy, speed plus such unusually dangerous surroundings and knowing disregard of another's safety may amount to wantonness.'

"In the case at bar the defendant's state of mind is disclosed by the circumstances that transpired before and at the time of the accident. * * *"

In the instant case, plaintiff's amended petition alleges that defendant was operating his automobile at a speed of 75 miles per hour around and through a right hand curve in the night season so that the auto skidded partly off the road and upon the berm; that, although plaintiff thereupon protested to defendant about the speed and manner of defendant's operation thereof, defendant failed to heed said protest, accelerated the speed of said automobile and drove it into and through a subsequent left hand curve where it again skidded partly off the road and upon the berm; that plaintiff renewed his protests as to the speed and manner in which said auto was being operated by defendant; that defendant again refused to heed said protests, laughed, and stated "Oh, this buggy will stick to the road," and on emerging from said curve further accelerated the speed of said automobile to approximately 85 miles per hour, plaintiff during said time continuing his said protests; that defendant then operated said automobile at a speed of 85 miles per hour into a third right hand curve ignoring plaintiff's continuing protests; and that in attempting to make said curve defendant lost control of his car completely, and said automobile skidded down said road in a southerly direction, crossed said road to defendant's left hand side thereof, left said road, went down in a ditch, emerged therefrom, and crashed through an iron picket fence on the northerly side of said road, travelling,

in all, since beginning to skid at said third curve, a distance of over 400 feet, throwing plaintiff about, in, and from said car and injuring him.

Since the truth of these allegations are admitted for the purpose of defendant's demurrer, it is reasonable to infer therefrom that the defendant's state of mind was clearly alleged to be such, under the facts and circumstances so stated, as to state essential facts sufficient in law to constitute a cause of action within the meaning of the Guest Statute (§4515.02 R. C.)

What the evidence may develop at the time of trial is another matter and is of no present concern; and this is particularly true with respect to defendant's contention that his alleged remark:—"Oh, this buggy will stick to the road," fails to state or show that defendant was conscious of any imminent danger.

In **Tighe v. Diamond, 149 Oh St 520, 37 O. O. 243, 80 N. E. 2d 122,** the Supreme Court of Ohio held in part as follows:

"5. In an action by an automobile guest against his host driver for personal injuries, unless the facts are undisputed, the question whether the host driver intentionally drove the automobile with wilful disregard of the probable results of such driving or whether he intentionally drove the automobile with knowledge, actual or implied, that serious injury would probably result to the guest, is ordinarily one of fact for the determination of the jury."

Judge Hart's opinion in the Tighe case, supra, states in part as follows beginning at page 530:

"Under this state of the record, there is clear evidence that Earl Diamond deliberately and intentionally planned to rush over the hump in the road at a rate of 60 miles an hour and throw the car up in the air so that its leap and landing would give his passengers a thrill. Was this wilful misconduct? Undoubtedly, there was no intent to injure his passengers, or himself, but did he, from his age and experience, have the capacity to appraise his conduct and appreciate its consequences? If so, was there an intent and purpose to carry out a scheme of conduct which was clearly wrong and which he should have recognized as violative of his duty necessary for the safety of the plaintiff as his passenger? Was his scheme of conduct such as to make him conscious, from his knowledge of the existing conditions, that injury to the plaintiff would likely or probably result and did he, with such knowledge and consciousness and indifference to consequences, proceed to carry out such scheme of conduct? These questions, if reasonable minds could differ as to their answers, were questions of fact lying wholly within the province of the jury.

"In an action by an automobile guest for personal injuries, the question whether the driver intentionally drove the automobile with wanton and reckless disregard of the possible results of such driving, or whether he intentionally drove the automobile with knowledge expressed or implied that serious injury would probably be the result thereof, is one of fact for the determination of the finder of the facts. **Kennard, a Minor, v. Palmer, 143 Oh St 1, 53 N. E. (2d), 908.**"

Upon due consideration of all of the allegations contained in plaintiff's amended petition, together with all the issues raised by defendant's demurrer, and the rules of law applicable thereto, this court must conclude that defendant's demurrer is not well made and should be overruled.

The court further finds that counsel for plaintiff should prepare an entry accordingly granting defendant leave to answer by September 5, 1957, and with appropriate exceptions noted therein on behalf of defendant; and thereupon submit same to counsel for defendant and to this court for approval by on or before August 10, 1957.