BROWN, ADMR., APPELLANT, *v.* RECHEL, APPELLEE.*

*Motion to certify the record overruled, June 10, 1959.

348

*Messrs. Bloom & Tyler,* for appellant.
*Messrs. Burke, Cooney & Morrissey,* for appellee.

Doyle, P. J. This appeal on questions of law stems from a ruling of the Court of Common Pleas of Hamilton County, sustaining a demurrer to a third amended petition filed therein, and a dismissal of the pleading when the plaintiff declined to plead further.

A third amended petition indicates, of course, the filing of various other petitions in the case, and, in the instant case, the record shows various sustained motions to strike pleaded material from the petitions, as well as the sustaining of demurrers to the previous pleadings.

We are asked to consider all of the allegations made in the various petitions, filed previous to the third amended petition, in examining and ruling upon the question of whether the demurrer to the third amended petition was properly sustained. This we cannot do.

"1. The substitution of an amended petition for an earlier one ordinarily constitutes an abandonment of the earlier pleading and a reliance upon the amended one.

"2. When a substantial part of a plaintiff's claim has been stricken from his petition he may elect to rely upon such petition and, upon dismissal of his cause by the court for refusal to amend, may have a review to determine the correctness of the trial court's action." *Grimm* v. *Modest,* 135 Ohio St., 275, 20 N. E. (2d), 527.

In the case before us we must and do determine that, when the plaintiff filed the several successive petitions, he abandoned the earlier pleadings; and that this court has only the allegations of the third and last amended petition before it to examine

for the purpose of finding whether a cause of action was stated. The well-known phrase, "a demurrer searches the record," does not apply to a factual situation such as we have here.

It is further said that, in this wrongful death action, the earlier pleadings alleged negligence only; but that, in amended pleadings, wilful and wanton misconduct on the part of the defendant was alleged, and that this charge was made for the first time after the two-year limitation in the statute had expired.

We find no merit in this claim.

"An amendment of a petition alleging negligent injury of the plaintiff by the defendant by adding thereto allegations characterizing such injury as wilful or intentional does not have the effect of stating an additional cause of action, such amendment may be made in the interest of justice after the expiration of the time limited for the prosecution of such an action, and such amendment relates back to the time when the action was commenced." *Cohen v. Bucey,* 158 Ohio St., 159, 107 N. E. (2d), 333.

See also: *Schweinfurth, Admr., v. C., C., C. & St. L. Ry. Co.,* 60 Ohio St., 215, 54 N. E., 89.

While *Cohen v. Bucey, supra,* was for personal injuries, and a so-called "pure statute of limitations" was under consideration, the rule is the same under the wrongful death statute when the limitation is coupled with a right of action. *McCampbell v. Southard,* 62 Ohio App., 339, at p. 341, 23 N. E. (2d), 954.

The challenged complaint read, in substance, that the plaintiff was the administrator of the estate of his son, Jerome Paul Brown, deceased, and the action was one seeking damages for pecuniary loss to the next of kin; that the defendant owned and occupied real property at 2926 Eggers Place in Cincinnati; and that "the rear yard of defendant's premises adjoined the rear yards of his surrounding neighbors; the said boundaries were unmarked and unfenced and were readily accessible to the children in the neighborhood; that said area was wooded and with the knowledge and acquiescence of the defendant was used by all of the said children in the neighborhood as a play area."

The pleading continued: "that the defendant, with full

knowledge of the facts and conditions as aforesaid, constructed and/or maintained in the rear of his said real estate a pool of water or fish pond, approximately fourteen feet in diameter, forty-four feet in circumference and three feet deep at its shallowest end; that said pool of water and fish pond was surrounded by plants, flowers, tall grass and weeds which concealed said pool of water and fish pond; that the edge of said pool or pond was the same level as the surrounding yard and was constructed and/or maintained without barricade or protection of any kind to prevent children of tender years from walking or falling into said pool or pond."

The petition further narrated the tragedy of the four-and-one-half-year-old child walking into or falling into the pond and drowning. It charged "that the death * * * was the proximate result of the wilful, wanton acts of the defendant in the following particulars: 1. In completely disregarding the safety of the plaintiff's decedent when the defendant knew that the plaintiff's decedent and other children of tender years were frequenting and playing in the area where the defendant constructed and/or maintained a pool or fish pond and were likely to walk or fall into same. 2. In failing to prevent the impending injury and death to the plaintiff's decedent after full knowledge of the existing conditions. 3. In being recklessly indifferent to the consequences of his said failure to avoid imminent injury and death to plaintiff's decedent."

We recognize *Sioux City & Pacific Rd. Co.* v. *Stout,* 17 Wall. (84 U. S.), 657, 21 L. Ed., 745, as the leading early case on the issue of a landowner's liability for injuries to small children who come upon his land to wander or play. The doctrine there pronounced by the Supreme Court of the United States, popularly labeled the "attractive nuisance doctrine" (sometimes called the "turntable" doctrine), has been the subject of ceaseless controversy over the eighty-five years following its release to the profession.

The litigation involved serious injuries to a six-year-old boy who, with other playmates, was playing on the turntable of a railway company at Blair, Nebraska, a settlement of about one hundred and fifty inhabitants. The turntable was in an

open space about eighty rods from the company's depot. There were but few houses in the neighborhood, and the child's parents lived in another part of the settlement about three-fourths of a mile distant. The injured child, with several companions, traveled to the turntable to play. The table was not attended or guarded by anyone, and revolved easily on its axis—it being neither locked nor fastened. Two of the boys commenced to turn the table, and the plaintiff, in attempting to get upon it, caught his foot "between the end of the rail on the turntable as it was revolving, and the end of the iron rail on the main track of the road, and was badly cut and crushed."

The following charge of the trial judge, after which the jury returned its verdict in favor of the plaintiff-child, was approved by the Supreme Court of the United States. The judge charged:

"This action rests, and rests alone, upon the alleged negligence of the defendant, and this negligence consists, as alleged, in not keeping the turntable guarded or locked. * * *

"If the turntable, in the manner it was constructed and left, was not dangerous in its nature, then of course the defendants would not be guilty of any negligence in not locking or guarding it. * * *

"But if the defendant did know, or had good reason to believe, under the circumstances of the case, the children of the place would resort to the turntable to play, and that if they did they would or might be injured, then, if they took no means to keep the children away, and no means to prevent accidents, they would be guilty of negligence, and would be answerable for damages caused to children by such negligence." *Stout* v. *Sioux City & P. Rd. Co.*, 2 Dill., 294, Fed. Case No. 13,504.

In the annotation "Liability of landowner for drowning of child," 8 A. L. R. (2d), 1254, may be found a host of cases indicating the attitude of the courts of various states to the "attractive nuisance" theory and the legal question here before us.

The state of Ohio, at least since the year 1907, has rejected the doctrine of the turntable cases. The Ohio doctrine follows:

"1. It is not the duty of an occupier of land to exercise

care to make it safe for infant children who come upon it without invitation but merely by sufferance.''

"3. A water works company is not liable for the death by drowning of an infant who comes upon its land without invitation and there falls into a reservoir or basin of water while playing about it without the knowledge of the company." *Wheeling & Lake Erie Rd. Co.* v. *Harvey; Swarts* v. *Akron Water Works Co.,* 77 Ohio St., 235, 83 N. E., 66, 122 Am. St. Rep., 503, 19 L. R. A. (N. S.), 1136.

In the above-cited cases (77 Ohio St., 235, at p. 242), Summers, J., observed:

"* * * The multitude of circumstances under which the owner of property would be liable for injuries to children, and the very serious burden that was, in consequence, being placed on the owners of property, were very probably not foreseen in the Stout case. But the cases became so numerous as to occasion very careful examination of the principles laid down in that case. In many jurisdictions the correctness of the conclusion there reached is denied, and in some of the states where that decision was followed the courts have repudiated the doctrine, in others they have limited it, and in still others they have declined to follow the doctrine in any case except a turntable case.''

In *Ryan* v. *Towar,* 128 Mich., 463, 87 N. W., 644, 92 Am. St. Rep., 481, 55 L. R. A., 310, it was observed in the opinion (page 470):

"Here we have the doctrine of the *Turntable Cases* carried to its natural and logical result. We have only to add that every man who leaves a wheelbarrow, or a lawnmower, or a spade upon his lawn; * * * a wagon in his barnyard, upon which children may climb, and from which they may fall; * * * does so at the risk of having the question of his negligence left to a sympathetic jury. How far does the rule go?''

Language indicating contrary thinking appears in a concurring opinion in *Ziehm* v. *Vale,* 98 Ohio St., 306, at page 314, 120 N. E., 702, 1 A. L. R., 1381. The judge wrote:

"In the syllabus and the opinion an effort is made to dis-

tinguish this case from the *Harvey case,* upon which the Court of Appeals based its judgment.

"Whenever a court undertakes to distinguish or differentiate one case from another, a strong presumption arises that the court approves such other case, the judgment, and the course of reasoning through which such judgment was reached.

"I desire here and now to register my protest against the judgment of that case. It was an astonisher to the profession and the public at the time it was rendered, in 1907, and indicates the highwater mark of the Supreme Court of that time in its effort to magnify property right and minimize personal right—the right to life, limb, health and safety—especially when applied to a child four and a half years of age."

Despite the views of this judge, the Supreme Court of Ohio has consistently adhered to the doctrine of the *Harvey case,* and its latest approval appears in *Signs, a Minor,* v. *Signs,* 161 Ohio St., 241, at pages 242-243, where Taft, J., in writing the opinion, stated:

"Even without such a warning, if plaintiff had strayed from his home premises onto the premises of a neighbor where such a gasoline pump had been maintained, he could not have recovered from the neighbor for negligence, such as that claimed to have been involved in the instant case, in the maintenance of such a gasoline pump by the neighbor on his own premises. *Soles, Admr.,* v. *Ohio Edison Co.,* 144 Ohio St., 373, 59 N. E. (2d), 138; *Pittsburgh, Ft. Wayne & Chicago Ry. Co.* v. *Bingham, Admx.,* 29 Ohio St., 364, 23 Am. Rep., 751. In such a case, the infancy of a child is not a factor, under the decisions of this court, in conferring upon the child any greater rights than those of a trespasser. *Railroad Co.* v. *Harvey,* 77 Ohio St., 235, 83 N. E., 66, 122 Am. St. Rep., 503, 19 L. R. A. (N. S.), 1136; *Hannan, Admr.,* v. *Ehrlich,* 102 Ohio St., 176, 131 N. E., 504; *Sharp Realty Co.* v. *Forsha, Jr., a Minor,* 122 Ohio St., 368, 171 N. E., 598. Although the law, as long established in this state by these decisions, may seem to be harsh, there has been no legislative change therein."

In *Hannan, Admr.,* v. *Ehrlich,* cited as authority by Judge

Taft, appears the following language in the syllabus of the court:

"2. The words 'permitted, allowed and acquiesced' imply no inducement, allurement or enticement, and should be construed as creating the relation of licensor and licensee."

"4. A licensee takes his license subject to its attendant perils and risks, and the licensor owes him no duty except to refrain from wantonly or wilfully injuring him and to exercise ordinary care after discovering him to be in peril; he should not be exposed to hidden dangers, pitfalls or obstructions.

"5. The foregoing rule is not altered by the fact that the injured person is a child of tender years."

From these cases it appears that the Supreme Court of this state adopts the doctrine that, if landowners are not bound to warn adult trespassers or bare licensees of hidden dangers—dangers which they, by ordinary care, cannot discover and therefore cannot avoid—there is no duty to warn or protect an infant against open and reasonably visible dangers which it is unable to appreciate; on the theory that there is no legal distinction between the duties of the owners in one case and the other. See statement of Summers, J., at page 254 of the *Harvey case* (77 Ohio St., 235).

The pleading in the case before us alleged facts sufficient to classify the child as a bare licensee as he wandered onto the neighbor's property. Under such circumstances, recovery for injury or death could not be predicated upon a claim of negligence alone, because the landowner's only duty under the pleaded facts was to not wilfully or wantonly cause him injury.

It is charged that the landowner committed certain specified "wilful" and "wanton" acts. We therefore must examine the pleaded facts in the light of the pleaded legal conclusions of wilful or wanton misconduct or "acts," and determine therefrom whether a cause of action was stated.

A wilful tort, or "act," implies an intent or purpose to injure. Nothing in the pleading suggests that this landowner intended to injure this or any other child. A wilful tort is not the same, however, as "wilful misconduct," and we therefore must proceed to examine the meaning of "wilful misconduct."

"Wilful misconduct" is something more than negligence. It imparts a more positive mental condition prompting an act than does the term "wanton misconduct."

In *Tighe, a Minor, v. Diamond,* 149 Ohio St., 520, 80 N. E. (2d), 122, it is said (at page 527) that:

"* * * 'Wilful misconduct' implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. * * * The word, 'wilful,' used in the phrase, 'wilful misconduct,' implies intent, but the intention relates to the misconduct and not merely to the fact that some specific act * * * was intentionally done. * * * The intention relates to the commission of wrongful conduct, independent of the intent to use certain means with which to carry out such conduct.

"In order that one may be guilty of 'wilful misconduct,' an actual intention to injure need not be shown. * * * 'Wilful misconduct' includes a wilful tort, or an intent to injure, but an intent to injure is not a necessary element. 'Wilful misconduct' * * * is either the doing of an act with specific intent to injure * * *, or, with full knowledge of existing conditions, the intentional execution of a wrongful course of conduct which he knows should not be carried out or the intentional failure to do something which he knows should be done * * *, under circumstances tending to disclose that * * * [he] knows or should know that injury * * * will be the probable result of such conduct. * * *

" 'There is a constructive intention as to the consequences, which, entering into the wilful, intentional act, the law imputes to the offender, and in this way a charge which otherwise would be mere negligence, becomes, by reason of a reckless disregard of probable consequences, a wilful wrong.' "

Judge Hunsicker (one of the judges in this case), and the writer of this opinion, were of the court which reviewed the above case of *Tighe* v. *Diamond,* in the Ninth Appellate District, the judgment in which was affirmed by the Supreme Court. We are aware that the case involved a motorist and the applica-

tion of the so-called guest statute; however, the legal principles of wilful and wanton misconduct therein under consideration are equally applicable to a landowner in the use of his property.

There is involved in the case before us not so much a question of what are the legal rules, but a question of applying the law as it exists to the circumstances and conditions set forth. What is the proper social-legal approach to the liability of persons who have swimming pools in their yards, or other pools maintained for the aesthetic satisfaction of beautifying their premises according to their concepts of nature, either in its artificial, or in its rough, state? What is the proper approach to the right of a baby to secure damages for injury resulting from a normally innocuous condition of a neighbor's property, but which condition causes death to a wandering and exploring child?

As we view the pleading in the light of an attempt to plead wilful misconduct, we are of the opinion that it falls far short of stating such misconduct, when taking into consideration the approach of the courts of this state to similar circumstances. In a consideration of the legal-social interest of the property owner, against the legal-social interest of the small child who is permitted to wander onto a neighbor's land without invitation, and who falls, crawls or walks into an ordinary, shallow pool of water confined in a small pond, and which is visible to the wary, after penetrating the surrounding shrubbery, it appears that the Supreme Court has definitely drawn the line with the rule "that a licensee takes his license subject to its attendant perils and risks," and that the rule is not altered by the fact that the injured person is a child of tender years.

The fact that a person is charged with wilful or wanton misconduct or "acts" in so many words, does not make a petition good as against demurrer if the operative facts pleaded do not state a case of such misconduct, proximately causing injury or death.

As noted above, the pleading also charges "wanton misconduct" or "wanton acts."

In *Higbee Co.* v. *Jackson,* 101 Ohio St., 75, 128 N. E., 61, 14 A. L. R., 131, it is declared that, wanton misconduct compre-

hends an entire absence of all care for the safety of others, and an indifference to consequences.

In *Universal Concrete Pipe Co.* v. *Bassett*, 130 Ohio St., 567, 200 N. E., 843, 119 A. L. R., 646, it is said to imply a failure to exercise any care toward those to whom a duty of care is owing, when the probability that harm will result from such failure is great, and such probability is known to the actor. Wanton misconduct is positive in nature, while mere negligence is naturally negative in character.

We find nothing in the operative facts which states a cause of action in wanton "acts" or misconduct. Bare legal conclusions do not suffice. Nothing is pleaded showing "positive" conduct of the defendant.

As has been previously said, the sole basis for recovery in a case of this nature must be in tort known as wilful tort or wilful or wanton misconduct. Negligence alone is not sufficient to sustain an action for a trespasser, or a bare licensee, injured on another's property, even though such licensee is a child of tender years.

The maintenance of a small three-foot-deep pool on one's premises, not shown to have the characteristics of a dangerous pitfall or obstruction, into which a licensee child falls and drowns, even though the child was so immature as to be unable to appreciate danger, cannot be said to impose liability upon the property owner for the child's death.

This Court of Appeals cannot strike a path along a new course. The law of the *Stout case* has been rejected in this state; and the creation of liability in a case of this nature, marking a point of departure from the law as we know it today, must come from the Legislature or from the Supreme Court, when, and if, it determines to overrule its previous decisions.

The judgment sustaining the demurrer and dismissing the third amended petition will be sustained.

*Judgment affirmed.*

HUNSICKER and COLLIER, JJ., concur.

DOYLE, P. J., and HUNSICKER, J., of the Ninth Appellate District, and COLLIER, J., of the Fourth Appellate District, sitting by designation in the First Appellate District.