OPINION
{¶ 1} This is an appeal from the granting of Summary Judgment by the Court of Common Pleas of Stark County on the issue of the lack of existence of disputed material facts as to wanton and willful misconduct under R.C. 4931.49.
 {¶ 2} The sole Assignment of Error is:
 I. {¶ 3} "The trial court erred in entering summary judgment as a matter of law under the willful and wanton misconduct standard of Ohio Rev. Code Section 4931.49 where genuine issues of material fact exist as to the conduct of both the political entity and its employee dispatcher in the operation of 9-1-1 emergency services."
 STATEMENT OF THE FACTS AND CASE {¶ 4} Appellee, Regional Emergency Dispatch Center (RED) is a public safety answering service for 9-1-1 calls in western Stark County under the auspices of several police and fire departments entitled Local Organized Governments in Cooperation (LOGIC).
 {¶ 5} Lisa Ellington was an employee of LOGIC and RED at the time of the occurrence of the events forming the basis of this action and appeal.
 {¶ 6} On September 16, 2000, Jean Toles was stabbed multiple times by Lamarr Parr resulting in her death and the death of her fetus. This occurred in the vehicle driven by Mr. Parr in which Jean Toles was a passenger.
 {¶ 7} A vehicle proceeding behind the Parr vehicle observed the assault taking place, though not specifically the weapon involved, and reported such to 9-1-1.
 {¶ 8} Lisa Ellington, as the 9-1-1 dispatcher, received the call and informed the caller that she would "tell the officers so maybe we can watch for them."
 {¶ 9} However, Ms. Ellington did not notify the police.
 STANDARD OF REVIEW {¶ 10} Civil Rule 56(C) states, in pertinent part:
 {¶ 11} "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 12} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. In order to survive a motion for summary judgment, the non-moving party must produce evidence on any issue to which that party bears the burden of production at trial. Wing v. Anchor Media Ltd. of Texas (1991),59 Ohio St.3d 108, citing Celotex v. Catrett (1986), 477 U.S. 317. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35, 36.
 I. {¶ 13} The trial court in the case sub judice ruled:
 {¶ 14} "The Court finds that the facts presented herein as provided to the Court would not permit a finding, as a matter of law, of wanton misconduct or willful misconduct. Even significant evidence of negligence does not rise to the appropriate legal level necessary to maintain this action."
 {¶ 15} The statutes relative to governmental immunity are:
 {¶ 16} "2744.02 Classification of functions of political subdivisions; liability; exceptions.
 {¶ 17} "(A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
 {¶ 18} "(2) Subject to statutory limitations upon their monetary jurisdiction, the courts of common pleas, the municipal courts, and the county courts have jurisdiction to hear and determine civil actions governed by or brought pursuant to this chapter.
 {¶ 19} "(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
 {¶ 20} "(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees upon the public roads, highways, or streets when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:
 {¶ 21} "(a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct;
 {¶ 22} "(b) A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct;
 {¶ 23} "(c) A member of an emergency medical service owned or operated by a political subdivision was operating a motor vehicle while responding to or completing a call for emergency medical care or treatment, the member was holding a valid commercial driver's license issued pursuant to Chapter 4506. or a driver's license issued pursuant to Chapter 4507. of the Revised Code, the operation of the vehicle did not constitute willful or wanton misconduct, and the operation complies with the precautions of section 4511.03 of the Revised Code.
 {¶ 24} "(2) Except as otherwise provided in sections 3314.07 and3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.
 {¶ 25} "(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.
 {¶ 26} "(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.
 {¶ 27} "(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37
of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued."
 {¶ 28} "2744.03 Defenses or immunities of subdivision and employee.
 {¶ 29} "(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
 {¶ 30} "(1) The political subdivision is immune from liability if the employee involved was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function.
 {¶ 31} "(2) The political subdivision is immune from liability if the conduct of the employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the political subdivision or employee.
 {¶ 32} "(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
 {¶ 33} "(4) The political subdivision is immune from liability if the action or failure to act by the political subdivision or employee involved that gave rise to the claim of liability resulted in injury or death to a person who had been convicted of or pleaded guilty to a criminal offense and who, at the time of the injury or death, was serving any portion of the person's sentence by performing community service work for or in the political subdivision whether pursuant to section 2951.02
of the Revised Code or otherwise, or resulted in injury or death to a child who was found to be a delinquent child and who, at the time of the injury or death, was performing community service or community work for or in a political subdivision in accordance with the order of a juvenile court entered pursuant to section 2152.19 or 2152.20 of the Revised Code, and if, at the time of the person's or child's injury or death, the person or child was covered for purposes of Chapter 4123. of the Revised Code in connection with the community service or community work for or in the political subdivision.
 {¶ 34} "(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 35} "(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
 {¶ 36} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 {¶ 37} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 {¶ 38} "(c) Liability is expressly imposed upon the employee by a section of the Revised Code.
 {¶ 39} "(7) The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant of any such person, or a judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code.
 {¶ 40} "(B) Any immunity or defense conferred upon, or referred to in connection with, an employee by division (A)(6) or (7) of this section does not affect or limit any liability of a political subdivision for an act or omission of the employee as provided in section 2744.02 of the Revised Code."
 {¶ 41} Revised Code 4931.49(A) and (B) provide:
 {¶ 42} "(A) The state, the state highway patrol, or a subdivision participating in a 9-1-1 system and any officer, agent, or employee of the state, state highway patrol, or a participating subdivision is not liable in damages in a civil action for injuries, death, or loss to persons or property arising from any act or omission, except willful or wanton misconduct, in connection with developing, adopting, or approving any final plan or any agreement made under section 4931.48 of the Revised Code or otherwise bringing into operation a 9-1-1 system pursuant to those provisions.
 {¶ 43} "(B) Except as otherwise provided in sections 701.02 and4765.49 of the Revised Code, an individual who gives emergency instructions through a 9-1-1 system established under sections 4931.40 to4931.54 of the Revised Code, and the principals for whom the person acts, including both employers and independent contractors, public and private, and an individual who follows emergency instructions and the principals for whom that person acts, including both employers and independent contractors, public and private, are not liable in damages in a civil action for injuries, death, or loss to persons or property arising from the issuance or following of emergency instructions, except where the issuance or following of the instructions constitutes willful or wanton misconduct."
 {¶ 44} Wanton and willful misconduct has been defined in numerous decisions.
 {¶ 45} Justice Cook in Gladon v. Greater Cleveland RegionalTransit Authority (1996), 75 Ohio St.3d 312 stated:
 {¶ 46} ". . . `willful conduct' involves intent, purpose, or design to injure, and "wanton conduct" involves failure to exercise any care whatsoever toward those to whom he owes duty of care, and his failure occurs under circumstances in which there is great probability that harm will result."
 {¶ 47} Brockman v. Bell (1992), 78 Ohio App.3d 508 held:
 {¶ 48} "`Willful misconduct' involves more positive mental state prompting injurious act than `wanton misconduct' on continuum between negligence and intentional misconduct, but `willful misconduct' implies intent relating to misconduct rather than relating to result so that intent to injure need not be shown.
 {¶ 49} "`Reckless misconduct' as defined in Restatement of Torts, 2d 500, may be used interchangeably with `willful misconduct' and, thus, `wanton or reckless misconduct' as used in sovereign immunity statute protecting governmental or proprietary functions of government employees is functional equivalent of `willful or wanton misconduct' as used in immunity statute protecting fire fighters from liability for negligent operation of motor vehicles R.C. 2744.02(B)(1)(b), 2744.03(A)(6)."
 {¶ 50} Tighe v. Diamond (1948), 149 Ohio St. 520 added:
 {¶ 51} "The term `willful tort' implies an intent or purpose to injure, and is not synonymous with `wanton misconduct' or `willful misconduct'. . .
 {¶ 52} "`Wanton misconduct' comprehends an entire absence of all care for safety of others and an indifference to consequences, but it is not necessary that an injury be intended or that there be any ill will on the part of the actor toward the person injured as a result of such conduct."
 {¶ 53} The court in Shallehauser v. City of Medina (2002),148 Ohio App.3d 41 defined such terms:
 {¶ 54} "`Wanton misconduct' has been defined as Athe failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor." (Citation omitted.) Brockman v. Bell (1992), 78 Ohio App.3d 508, 515,605 N.E.2d 445.
 {¶ 55} "`Willful misconduct' is `an intentional deviation from a clear dutyor from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury.'" (Citations omitted.) Id., quoting Tighe v. Diamond 1948), 149 Ohio St. 520,527, 37 O.O. 243, 80 N.E.2d 122."
 {¶ 56} This Court in Jackson v. McDonald (2001), 144 Ohio App.3d 301
further defined such terms:
 {¶ 57} "To act in reckless disregard of the safety of others, thereby removing protection of official immunity, a government employee's conduct must be of such risk that it is substantially greater than that which is necessary to make the conduct negligent.
 {¶ 58} "`Wanton misconduct' has been defined as a failure to exercise any care whatsoever. Hawkins v. Ivy (1977), 50 Ohio St.2d 114, syllabus. The court in such case eliminated the phraseology of "disposition of perversity" contained in Roszman v. Sammett (1971),26 Ohio St.2d 94, 96-97. To act in reckless disregard of the safety of others, the conduct must be of such risk that it is substantially greater than that which is necessary to make the conduct negligent. Thompson v.McNeill (1990) 53 Ohio St.3d 102."
 {¶ 59} With these definitional guides we must determine the material facts, disputed or not, under our de novo review as to the applicability of Summary Judgment.
 {¶ 60} Initially, we must dismiss outright the argument that appellee, contractually, had nothing to do with 9-1-1 calls. Appellee, also dismisses the applicability of R.C. 4931.49.
 {¶ 61} Appellee is the entity to receive emergency calls from the public and forward these for the protection of the public to the appropriate authority capable of responding.
 {¶ 62} Revised Code 4931.49(A) clearly is applicable with respect to the training given to Ms. Ellington as such falls within the development of the 9-1-1 system. Whether such training or manual contents fell within the sphere of negligence is therefore immaterial in that this specific statute which is applicable to the development of such system would require wanton and/or willful misconduct.
 {¶ 63} Section (B) of such section also provides immunity to acts or omissions less than wanton and/or willful misconduct as to persons giving emergency instructions. An examination of the content of the transcript indicates that no emergency instructions were given by Ms. Ellington and therefore this Subsection (B) is inapplicable. We must therefore refer to other statutes as to governmental immunity, including R.C. '2744.02 and .03 set forth heretofore.
 {¶ 64} The record of the call in the case sub judice is :
 {¶ 65} "Station Recorded on Sept. 16, 400, at 1746
 {¶ 66} "Caller — Help please. Can we talk to someone.
 {¶ 67} "Passenger screaming in background — Oh God. Oh no . . .
 {¶ 68} "Dispatcher — Hello.
 {¶ 69} "Caller — There's some kind of altercation going on in a car. They were driving crazy down the street and then they were fighting, and . . .
 {¶ 70} "Dispatcher — Okay, what street? Where at?
 {¶ 71} "Caller — They were, I don't see them anymore and they were on Arch and Third Street Southeast.
 {¶ 72} "Dispatcher — OK. What kind of a car?
 {¶ 73} "Caller — We didn't get the license plates . . . It was an older white looking car.
 {¶ 74} "Passenger — I think it was two males.
 {¶ 75} "Dispatcher — She said two males.
 {¶ 76} "Caller — That's what she said. I don't know. All I could see was them fighting.
 {¶ 77} "Dispatcher — Okay, I'll tell the officers so maybe we can watch out for them." With this record of the call, the fact that Ms. Ellington had no recollection of the contents of such call at her deposition is immaterial to this Court's de novo review as to the Crim.R. 56 motion.
 {¶ 78} The Ohio Supreme Court in partially reversing Hubbard v.Canton City School Board of Education (2002), 97 Ohio St.3d 451
determined that the language of R.C. 2744.02(B)(4) referencing negligence of the employees of a political subdivision occurring on the grounds of buildings being utilized for a governmental function negating immunity was not limited to injury resulting from physical defects or use of such grounds or buildings.
 {¶ 79} Therefore, if Ms. Ellington committed negligence within a building being utilized in this clearly governmental function, immunity under R.C. 2744.02(B)(4) would not apply, nor would wanton or willful misconduct be required.
 {¶ 80} However, in addition to this determination, we must respectfully disagree with Judge Sinclair as to the legal absence of the existence of wanton or willful misconduct possibly occurring due to the lack of any attempt by Ms. Ellington to notify the police.
 {¶ 81} Again, as stated in Gladon v. Greater Cleveland RegionalTransit Authority (1996), 75 Ohio St.3d 312:
 {¶ 82} "`Wanton conduct' involves failure to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result."
 {¶ 83} Such term "implies intent relating to misconduct rather than relating to result, so that intent to injure need not be shown."Brockman v. Bell (1992), 78 Ohio App.3d 508.
 {¶ 84} As stated in Fabrey v. McDonald Village Police Department
(1994), 70 Ohio St.3d 351 the issue of wanton misconduct is normally a jury question.
 {¶ 85} We, in sustaining the sole Assignment of Error, are not determining liability but are stating that the determination of the existence of wanton or willful misconduct under the facts of the case sub judice is a question for a jury as are facts supporting negligence only, if such term is applicable under facts found to warrant the applicability of R.C. 2744.02(B)(4).
 {¶ 86} This cause is reversed, the Summary Judgment vacated and remanded for further proceedings consistent herewith.
By: Boggins, J.
Edwards, J., dissents.
Hoffman, P.J., concurs in judgment only.