OPINION
Plaintiffs-appellants James L. Boyd and Val Boyd appeal from the judgment of the Richland County Court of Common Pleas which granted summary judgment in favor of defendants-appellees Village of Lexington and Officer Donald Copp.
 STATEMENT OF THE FACTS AND CASE
In January, 2000, James L. Boyd [hereinafter Boyd] and Charles Rice [hereinafter Rice] were in the midst of a contract dispute regarding Domino's Pizza franchise stores.[1] One of the issues at dispute involved the question of whether appellant had the right to be in a Domino's store in Lexington, Ohio. Sometime prior to January 6, 2000, Rice learned that Boyd intended to come to the Lexington store on January 6, 2000, to talk to store employees for some reason. Rice called the Lexington Police Department and warned them of the potential trespass situation that would occur if Boyd attempted to enter the Domino's store. At the request of the Police Department, Rice faxed the Police Department documentation which "confirmed the buyout situation and the severing of business ties by and between [Rice] and James Boyd regarding the subject Dominos Pizza establishment." Charles Rice Affidavit, para. 7. Rice also ordered Jeffrey Hunt [hereinafter Hunt], a District Manager over several of Rice's other Domino stores, to go to the Lexington store on January 6, 2000, to keep Boyd from entering the store.
At approximately 2:00 P.M. on January 6, 2000, Boyd arrived at the Lexington store and was confronted by Hunt. Hunt told Boyd to stay out of the store pursuant to Rice's instructions. Boyd entered the store anyway. According to Boyd, Hunt had blocked the doorway but Boyd was able to crawl between Hunt and the door jam. Boyd sat down in the office at the back of the store. Hunt called the Lexington Police.
Two officers, Donald Copp and Troy Weaver, were dispatched to the Domino's store. The Lexington Police Department Dispatcher told the officers that "[t]he owner of Domino's called [the police department] and said that the he was in a contract dispute with another gentleman and that the other gentleman was not to be on the property." Copp Deposition, page 9. The Dispatcher characterized the incident at the Domino's store to which the officers were responding as a "fight". Donald Copp Deposition, pg. 32.
When Officer Copp arrived at the Domino's store, Hunt identified himself as the district manager of the Domino's store. Hunt claimed that Rice, the owner of the store, had sent Hunt to the store to keep Boyd out of the store. Hunt stated that Boyd had pushed his way into the store, knocking Hunt down. Hunt told Officer Copp that Boyd was in the back of the store. However, Officer Copp saw no evidence of a fight or altercation. Two store employees were present upon the officers' arrival. Officer Copp did not speak with the employees and the employees offered no comments or information to the officers. Instead, Officer Copp walked directly to the office where Boyd was sitting behind a desk. Officer Copp told Boyd that Boyd needed to leave the store. Boyd refused, saying he was an owner of the business and was not going to leave.[2] Officer Copp again asked Boyd to obey his order to leave the store. Boyd again refused. Officer Copp arrested Boyd for criminal trespass.
Boyd claims that as Officer Copp was taking him out of the Domino's store, Officer Copp yanked the handcuffs up as he turned to talk to Officer Copp, causing pain to Boyd. Officer Copp claimed that he did not recall pulling on the handcuffs, but acknowledged that it is a technique that Officer Copp uses when an arrestee is being "non-compliant". Officer Copp acknowledged that if Boyd had turned towards the officer while being taken out of the store, he would have used this method to keep Boyd moving.
During the incident at the Domino's Pizza Store, Boyd's wife (Val Boyd) was present. Val Boyd attempted to reach Attorney Jason Murray on a cell phone. After Boyd had been arrested and placed in the police cruiser, Val Boyd reached the attorney. Val Boyd asked Officer Copp to speak with the attorney. Officer Copp agreed. Attorney Murray warned Officer Copp that this was a false arrest.
Officer Copp took Boyd to the police station and asked Boyd to write out a statement. After the statement was written, Boyd was issued a complaint/summons and released.
In February, 2000, Boyd sued Rice for breach of contract and false arrest. That case was settled, the partnership was dissolved and a mutual release was signed. On April 28, 2000, while that civil suit was pending, the criminal trespass charge against Boyd was dismissed.
On July 12, 2000, the Boyds filed a Complaint in the Richland County Court of Common Pleas. The Complaint named the Village of Lexington and Officer Donald Copp, in his individual and official capacity, as the defendants. The Complaint stated that Boyd's civil rights were violated and sought damages pursuant to the Civil Rights Act, 42 U.S.C. § 1983. The Complaint alleged that Boyd's arrest was without probable cause, malicious, intentional, reckless and wanton. The Boyds further claimed that Boyd was taken into custody wrongfully, wrongfully imprisoned, wrongfully arrested and wrongfully charged with a crime. Lastly, the Complaint stated that appellant's wife, Val Boyd, suffered damage as a result of seeing her husband being taken into custody.
On August 22, 2000, the Village of Lexington and Officer Copp [hereinafter appellees] filed an Answer, denying liability and asserting their immunity from suit and/or liability. Appellees further asserted that their actions constituted an exercise of lawful restraint and were executed under proper legal authority.
Appellees filed a Motion for Summary Judgment on June 1, 2001. On July 13, 2001, the trial court granted Summary Judgment in favor of appellees. It is from the July 13, 2001, Judgment Entry that appellants appeal, raising the following assignment of error:
 THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.
 (a) THE COURT MADE NUMEROUS AND INCORRECT CONCLUSIONS CONCERNING THE EVIDENCE CONTRARY TO RULE 56(C).
 (b) THE ARREST IN THIS CASE VIOLATED FEDERAL AND STATE LAW.
In their sole Assignment of Error, appellants contend that the trial court erred in granting appellees' motion for summary judgment. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35, 36. As such, we must refer to Civ. R. 56(C) which provides, in pertinent part:
 Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. It is based upon this standard that we review appellants' Assignment of Error.
In arguing that summary judgment was not appropriate, appellants assert that the trial court made incorrect conclusions concerning the evidence before the trial court. Further, appellants argue that Boyd's arrest violated Federal and State law and that appellees are not immune from liability. We will address each issue in turn.
I. Evidentiary Issues.
As noted above, an appellate court must independently review the record to determine if summary judgment was appropriate. Therefore, an appellate court affords no deference to the trial court's findings or conclusions while making its own judgment. Lorain Nat'l Bank v. SaratogaApts.(1989), 61 Ohio App.3d 127, 129. This court will independently review the record and facts presented and will not defer to the trial court's findings. Therefore, we decline to address each of appellants' factual challenges to the trial court's Judgment Entry. This Court will consider the facts as presented by the record and will not consider whether the facts as set forth by the trial court are accurate.
II. Federal and State Claims.
A. Federal Claims.
Appellants claim that Boyd's arrest violated Boyd's right against unreasonable seizure, pursuant to the Fourth Amendment to the United States Constitution. Appellants argue that Officer Copp did not have the requisite information as to who had possessory rights to the Domino's store to arrest Boyd for criminal trespass. Therefore, appellants submit that the arrest violated R.C. 2935.03(A)(1) and that a violation of R.C.2935.03(A)(1) is a violation of the Fourth Amendment. The Boyds claim that James Boyd's Fourth Amendment rights were violated because the arrest was without probable cause.
Appellants have brought these claims against Officer Copp, in both a personal and official capacity, and against the Village of Lexington. We note that a claim against a person in an official capacity is actually a claim against the governmental agency. Piphus v. Blum (1995),108 Ohio App.3d 218, 225 (citing Leach v. Shelby Cty. Sheriff (C.A.6, 1989), 891 F.2d 1241, 1245). Therefore, we must determine if Officer Copp is liable in a personal capacity and if the Village is liable.
Appellees contend that the arrest did not violate appellant'sFourth Amendment rights and that appellees are protected by the federal doctrine of qualified immunity. Therefore, appellees contend that they were entitled to summary judgment on the federal claim.
Appellants' federal claim is based upon 42 U.S.C. § 1983
[hereinafter Section 1983]. Section 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other property proceeding for redress.
1. Federal Claim against Officer Copp (in his personal capacity).
To establish a claim against an individual public official under Section 1983, a proponent must show that (1) the person performing the act operated under the color of law, and (2) the act deprived the plaintiff of a federally protected constitutional or statutory right.Gomez v. Toledo (1980), 446 U.S. 635; Cooperman v. Univ. SurgicalAssoc., Inc. (1987), 32 Ohio St.3d 191.
We have doubts about appellants' contention that Boyd's constitutional rights were violated. However, even if appellants have shown a violation of a federally protected right, there is an issue as to whether appellees are protected by qualified immunity.
Public officials, including police officers, who perform discretionary functions are shielded from liability for civil damages in a Section 1983 action by qualified immunity if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald (1982), 457 U.S. 800,818. The test is one of "objective reasonableness" that requires a "reasonably competent public official [to] know the law governing his conduct." Id. The United States Supreme Court has stated that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs (1986), 475 U.S. 335, 341. "[If] officers of reasonable competence could disagree on this issue, immunity should be recognized." Id; See Bruce v. Village of Ontario (Nov. 24, 1998), Richland App. No. 98-CA-9-2, unreported ("[a] violation of clearly established law must be so clear as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional").
"The doctrine [of qualified immunity] recognizes that these officials must routinely make close decisions in the exercise of their authority and that the law that guides their conduct is often ambiguous and difficult to apply." Murphy v. Reynoldsburg (Aug. 8, 1991), Franklin App. No. 90AP-1296, unreported, reversed on other grounds (1992),65 Ohio St.3d 356. Thus, qualified immunity encourages government officials to act without hesitation when confronted with a problem that requires a quick and decisive response and ameliorates the concern that most persons would be reluctant to participate in public service in the absence of such immunity. Id.
Qualified immunity provides immunity not only from liability but also from trial and its related burdens, costs, risks, and distractions.Piphus, supra (citing Mitchell v. Forsyth (1985), 472 U.S. 511, 526). "Qualified immunity is a question of law, not fact, which can be properly determined by summary judgment." Cook v. Cincinnati (1995),103 Ohio App.3d 80, 85 (citing Harlow v. Fitzgerald (1982),457 U.S. 800,818; Dominque v. Telb (C.A. 6, 1987), 831 F.2d 673, 676). Therefore, given a particular set of facts viewed in the light most favorable to the non-moving plaintiff, the issue of whether a public official did not act reasonably (and hence was not entitled to qualified immunity) is a matter for the court and may properly be determined by summary judgment. Id; Williams v. Franklin County Bd. of Com'rs., (Aug. 28, 2001), Franklin App. No. 01AP-153, unreported, 2001 WL 988011; Murphyv. Reynoldsburg (Aug. 8, 1991), Franklin App. No. 990AP-1296, unreported, 1991 WL 150938, reversed on other grounds (1992),65 Ohio St.3d 356. (Citing Poe v. Haydon (C.A.6, 1988), 853 F.2d 418,425).
Moreover, even on summary judgment, the ultimate burden of proof is on a plaintiff to show that a defendant is not entitled to qualified immunity. Cook, 103 Ohio App.3d at 85; Murphy, supra., Gardenhire v.Schubert (C.A. 6, 2000), 205 F.3d 303, 310-311. Although qualified immunity is an affirmative defense, the ultimate burden is on the plaintiff to show that a defendant is not entitled to qualified immunity.Wegener v. Covington (C.A.6, 1991), 933 F.2d 390, 392. A defendant bears the initial burden of coming forward with facts to suggest that he was acting within the scope of his discretionary authority during the incident in question. Id. Thereafter, the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in the defendant's position would have clearly understood that he was under an affirmative duty to refrain from such conduct. Id.
Applying these standards, summary judgment in favor of Officer Copp was appropriate if the undisputed facts, and those disputed facts viewed in Boyd's favor, fail to establish that Officer Copp's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct. Cook, 103 Ohio App.3d at 86.
Appellants claim that the warrantless arrest violated Boyd'sFourth Amendment rights under the United States Constitution. This claim is based upon an assertion that the arrest violated R.C. 2935.03(A)(1) and an assertion that there was no probable cause to arrest Boyd.
Revised Code 2935.03(A)(1) states the following, in relevant part (emphasis added):
 A)(1) A . . . municipal police officer . . . shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the political subdivision, . . . in which the peace officer is appointed, employed, or elected, a law of this state, an ordinance of a municipal corporation, or a resolution of a township.
The Boyds' claim that Officer Copp violated R.C. 2935.03(A)(1) when he arrested Boyd even though the alleged misdemeanor was not committed in Officer Copp's presence and Officer Copp had no personal knowledge based upon the Officer's own senses. It is not entirely clear that Boyd's arrest violated R.C. 2935.03(A)(1). Boyd continued to refuse to leave the store after being ordered to do so by Officer Copp. There is a strong argument to be made that Boyd was committing the alleged offense in the officer's presence.
However, there is a more significant problem with appellants' argument. In order to present a Section 1983 claim, the alleged wrongful conduct must violate one's federally protected rights. Gomez v. Toledo
(1980), 446 U.S. 635; Cooperman v. Univ. Surgical Assoc. Inc. (1987),32 Ohio St.3d 191. Section 1983 does not cover official conduct that violates only state law. Id. A violation of R.C. 2935.03(A)(1) is not a United States Constitutional violation. Appellant cites this court to cases in which an arrest for a minor misdemeanor, in violation of R.C.2935.26, has been found to rise to a Fourth Amendment violation[3]. However, Boyd was arrested for a fourth degree misdemeanor, allegedly in violation of R.C. 2935.03(A)(1). The Boyds cite this court to no cases showing that a violation of R.C. 2935.03(A)(1), involving a higher level misdemeanor, has been found to be a federal constitutional violation.
We note that other appellate courts, in the context of suppression issues, have found that a violation of R.C. 2935.03(A)(1) does not perse violate one's Fourth Amendment rights. E.g., State v. Schwienher
(Jan. 26, 1983), Hamilton App. No. C-820210, unreported, 1983 WL 5403;State v. Cranston (June 22, 1988), Wayne App. No. 2338; unreported, 1988 WL 66914; City of Middletown v. McGuire (Oct. 9, 1995), Butler App. No. CA94-11-202, unreported, 1995 WL 591238. These courts have found that a warrantless arrest is constitutionally valid if the officer had probable cause. Bucyrus v. Williams (1988), 46 Ohio App.3d 43, 45.
Probable cause exists at the time of the arrest when the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed an offense. Beck v.Ohio (1964), 379 U.S. 89, 91. Probable cause is determined from factual and practical considerations of everyday life on which reasonable and prudent men act. Draper v. United States (1959), 358 U.S. 307, 313. Ohio courts have interpreted this definition to include the "totality" of the facts and circumstances within a police officer's knowledge. See Statev. Finch (1985), 24 Ohio App.3d 38; Atwell v. State (1973),35 Ohio App.2d 221. This determination may, at times, involve hearsay. Of course, first hand observations of a police officer are more reliable than information that an officer learned from another person. State v.Beamon (Dec. 14, 2000), Lake App. No. 2000-L-028, unreported, 2001 WL 1602151. Further, information gained from an identified victim or disinterested, identified witness is more reliable than an unknown source, such as an anonymous informant. See Id.
Under the facts presented, we find that summary judgment was appropriate. Officer Copp was faced with conflicting information regarding the ownership and possessory rights to the store. Hunt identified himself as a district manager. Hunt said that Rice told him to go to the store and keep Boyd out of the store. This information corresponded to what Officer Copp already knew. Specifically, Officer Copp already believed Rice to be the owner of the store as a result of previous dealings with Rice and the store. Further, upon receiving the call to go to the store, the dispatcher told Officer Copp that the owner was in a contract dispute with another gentleman and that the other gentleman was not to be on the property.
On the other hand, Boyd claimed he had a right to be at the store as part owner. This claim was supported by Boyd's attorney via a cell phone call made by Val Boyd (Boyd's wife).[4]
Boyd also asserts that Officer Copp's investigation was insufficient. Boyd's affidavit indicates that he had "buy/sell paperwork and partnership documents" which he could have shown to Officer Copp to prove his ownership claim. Boyd claims he was not given an opportunity to produce those documents. However, there is no evidence that Boyd told Officer Copp of the paperwork and documents at the time of the arrest. Further, appellant asserts Officer Copp should have interviewed the two store employees who were present throughout the incident. While we note that appellant's assertion is correct, we also note that these employees did not volunteer any information to Officer Copp.
In light of all the facts and circumstances presented, including the conflicting evidence that Officer Copp was faced with, we find that appellants have failed to meet their burden. While hind sight may reflect that Boyd was a part owner of the business, and Officer Copp could have conducted a more thorough investigation, we find that the arrest was either supported by probable cause or, at worst, was not so unreasonable as to strip Officer Copp of immunity. Thus, summary judgment was appropriate.
2. Federal Claim against the Village of Lexington.
In their Complaint, appellants allege that:
 6. Defendant Copp at all times material to this Complaint was the servant agent appointee and employee of Defendant Village of Lexington acting in furtherance and within the scope of said employment relationship and said Village's answer but law [sic] for the acts of its officer under Federal and State law.
 7. The acts of Defendant Copp were committed either on the instruction of Defendant Village or within the knowledge and consent of said Defendant or were thereafter approved and ratified by said Defendant. By virtue of said Defendant's position as an officer of the Village of Lexington the acts and conduct of said Defendant represent the official policy of the Village of Lexington.
However, appellants presented no arguments on appeal regarding the Village's liability. If appellants sought to appeal this issue, appellants have violated App. R. 16(A)(7) by not providing an argument containing their contentions on this issue.[5] Despite appellant's lack of argument, we will briefly address the issue of the Village's liability under Section 1983.
While local governments are subject to suit under Section 1983, municipal liability cannot rest solely on the doctrine of respondeat superior. Monell v. Dept. of Social Services City of New York (1978),436 U.S. 658, 690. In order to find a local government liable under Section 1983, several factors must be present: (1) the municipality must itself be responsible by either sanctioning or ordering the claimed constitutional violation; (2) the municipal actors must have "final" policymaking authority under state or municipal law (or have been delegated such) for that particular area of the city's business; and (3) the action taken must be pursuant to some policy adopted by the municipal actors exercising their policymaking authority. Norwell v. Cincinnati
(1999), 133 Ohio App.3d 790, 806.
In Pembaur v. Cincinnati (1986), 475 U.S. 469, the Court described the term "policy" as one referring to "formal rules or understandings — often but not always committed to writing — that are intended to, and do, establish fixed plans of action to be followed under similar circumstances." Id. at 480-481. While "policy" generally connotes a rule of general application, a decision "tailored to a particular situation" may also constitute a "policy" if made by the proper municipal decisionmaker. Id. Liability may arise under this standard only in limited circumstances where it can fairly be said that the municipality itself caused the constitutional violation at issue by having a policy or custom whose execution inflicted the claimed injury.Canton v. Harris (1989), 489 U.S. 378.
Appellant has not identified any particular municipal official, other than the arresting officer, as the decisionmaker responsible for instigating this arrest. Likewise, appellants did not provide evidence of a specific policy, custom or practice on the part of the Village that would have caused the allegedly unconstitutional arrest of Boyd.
Therefore, we conclude that even if appellants preserved this issue for appeal, summary judgment was appropriate.
B. State Claims
The Boyds further allege that Officer Copp's arrest of Boyd constituted the state tort claims of wrongful arrest and false imprisonment. The Boyds' Complaint sought damages from both appellees, Officer Copp and the Village of Lexington. Appellees argue that they are immune pursuant to R.C. Chapter 2744.
Revised Code Chapter 2744 creates a presumption that political subdivisions and their law enforcement officers are immune from liability from state tort claims. Cook v. Cincinnati (1995), 103 Ohio App.3d 80,90. This presumption may be overcome under some circumstances.
However, before considering whether this immunity protects appellees under the circumstances sub judice, we note that the question of whether a governmental employee or political subdivision is entitled to this statutory immunity is a question of law for a court's determination.Conley v. Shearer (1992), 64 Ohio St.3d 284, 291; Feitshans v. DarkeCounty (1996), 116 Ohio App.3d 14, 19; Sharp v. Scioto County JointVocational School (Sept. 10, 2001), Scioto app. No. 01CA2770, unreported, 2001 WL 1085297. We will address immunity as it applies to Officer Copp and the Village of Lexington, in turn.
1. State claims against Officer Copp.
The Boyds claim that Officer Copp lost his immunity because his arrest of Boyd was committed with malicious purpose, in bad faith, or in a wanton or reckless manner. Revised Code 2744.03 provides, in pertinent part:
 In a civil action brought against . . . an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
. . .
 (6) [T]he employee is immune from liability unless one of the following applies:
. . .
 (b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
The terms "malice," "bad faith," "wanton" and "reckless" have been defined as follows:
 "Malice" is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. See, also, Jackson v. Butler Cty. Bd. of Commrs. (1991), 76 Ohio App.3d 448, 602 N.E.2d 363. "Bad faith" involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another. Jackson, supra.
 . . . [W]anton misconduct is the failure to exercise any care whatsoever, citing Hawkins v. Ivy (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, syllabus. The court went on to state that "mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." Fabrey, supra, at 356, 639 N.E.2d at 35, citing Roszman v. Sammett (1971), 26 Ohio St.2d 94, 96-97, 55 O.O.2d 165, 166-167, 269 N.E.2d 420, 422. Such perversity must be under such conditions that the actor must be conscious that his conduct will, in all likelihood, result in an injury. Fabrey, supra.
Cook v. Cincinnati (1995), 103 Ohio App.3d 80, 90-91.
The term "reckless" has been defined as follows:
 [R]eckless' misconduct, for purposes of R.C. Chapter 2744, is the equivalent of `willful' misconduct. Brockman, 78 Ohio App.3d at 516, 605 N.E.2d at 450. `Willful' misconduct is `something more than negligence and it involves a more positive mental state prompting the injurious act than does wanton misconduct.' Id. at 515, 605 N.E.2d at 449. The intention underlying such misconduct relates to the misconduct, not the result. Thus, `willful' misconduct is `an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury.' Id., quoting Tighe v. Diamond
(1948), 149 Ohio St. 520, 37 O.O. 243, 80 N.E.2d 122.
Hunter v. Columbus (2000) 139 Ohio App.3d 962, 970.
Even if, assuming arguendo, that Officer Copp's arrest of Boyd violated Boyd's constitutional rights, we do not find any evidence in the record suggesting malice or bad faith. Likewise, we do not find evidence that Officer Copp's conduct was wanton, in that the term wanton connotes a complete lack of care. Lastly, we find that while Officer Copp's investigation was not as thorough as it could have been, we find that no genuine issue of material fact exists regarding his conduct under the definition of recklessness. At most, drawing all reasonable inferences in favor of appellant, Officer Copp's conduct was negligent. Mere negligence is not sufficient to remove the cloak of immunity.
2. State Claims against the Village of Lexington.
Appellants have again failed to present any argument regarding the liability of the Village. However, upon review, we find that the Village is immune under R.C. Chapter 2744.
Generally, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision. . . ." R.C. 2744.02(A)(1). Exceptions to this general rule are delineated in R.C. 2744.02(B)(1)-(5).[6] Appellant has alleged no circumstances to which an exception applies. Therefore, the Village must be found immune from liability. Therefore, summary judgment was appropriate.
Appellants' assignment of error is overruled.
The judgment of the Richland County Court of Common Pleas is affirmed.
EDWARDS, J., HOFFMAN, P.J. and GWIN, J. concurs
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Richland County Common Pleas Court is affirmed. Costs to appellants.
[1] While we recognize that Boyd is very concerned over the details of the contract dispute between Boyd and Rice, we find most of the details irrelevant to the disposition of this case. This Court will only address factual issues we find relevant to the matter at hand.
[2] Boyd could not recall exactly what he told Officer Copp in response to the Officer's order to leave the store. However, Boyd claimed that this is what he said, "in so many words." Boyd Deposition, page 29 and 30. Officer Copp claimed that Boyd responded that "I [Boyd] am not going anywhere." Copp Deposition, page 24. Officer Copp claimed Boyd did not claim to be an owner of the business until after Boyd had been arrested and placed in the police cruiser. Copp Deposition, page 24.
[3] Revised Code 2935.26 states the following, in relevant part:
 "(A) Notwithstanding any other provision of the Revised Code, when a law enforcement officer is otherwise authorized to arrest a person for the commission of a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation, unless one of the [exceptions] applies. . . ."
[4] The record does not reflect if Officer Copp knew Boyd's attorney (Jason Murray) or recognized the attorney's voice over the phone.
[5] (A) Brief of the appellant
 The appellant shall include in its brief, under the headings and in the order indicated, all of the following:
. . .
 (7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.
App. R. 16(A).
[6] (B) [A] political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent operation of any motor vehicle by their employees upon the public roads, highways, or streets when the employees are engaged within the scope of their employment and authority. . . .
(2) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.
(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance. . . .
(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function. . . .
(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code. . . .