[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 469.]

BAUM ET AL., APPELLEES, V. OHIO STATE HIGHWAY PATROL ET AL.,
APPELLANTS.

[Cite as *Baum v. Ohio State Hwy. Patrol*, 1995-Ohio-155.]

*Torts—Negligence—State Highway Patrol immune from liability for injuries caused by patrol officer in operation of his vehicle while responding to an emergency call, when.*

In the absence of willful or wanton misconduct, the State Highway Patrol is immune from liability for injuries caused by a patrol officer in the operation of his vehicle while responding to an emergency call.

(No. 93-2495—Submitted March 7, 1995—Decided July 12, 1995.)

APPEAL from the Court of Appeals for Franklin County, No. 93AP-68.

————————

{¶ 1} On August 3, 1989, sometime before midnight, fourteen-year-old Doug Stacy and a friend went joyriding in a car that they took without the owner's consent from the garage of Stacy's next-door neighbor. With Stacy driving, the pair proceeded to drive around the town of Milford and the neighboring town of Loveland until they were spotted by a Miami Township police officer. The officer turned on the pursuit lights of his patrol car in an attempt to stop the Stacy vehicle. Stacy observed the activated pursuit lights, but he panicked and fled.

{¶ 2} The township police officer pursued the Stacy vehicle onto I-275 westbound. At that point, two Ohio State Highway Patrol Troopers, each in separate cruisers, picked up the pursuit and the Miami Township policeman ceased pursuing the Stacy vehicle. Through radio communications at the Hamilton County Communications Center, two Hamilton County deputy sheriffs learned of the chase. On their own volition, and without communication with the Ohio State

Highway Patrol, they initiated a roadblock bringing traffic to a stop on I-275, a mile and a half east of the interchange of I-275 and I-74.

{¶ 3} The appellee, Steven E. Baum, entered the interstate highway and eventually came upon the roadblock area, where he was required to stop his vehicle on the highway. While he remained stopped, his vehicle was struck from behind by Officer Blyberg's patrol vehicle.

{¶ 4} Appellees, Steven E. and Beverly J. Baum, filed a complaint in the Ohio Court of Claims against the Ohio State Highway Patrol. Appellee sought damages from the patrol for injuries he sustained from the collision. The complaint alleged that the patrol, through its agent, Officer Blyberg, acted negligently, wantonly, willfully, and recklessly. There was evidence presented at trial that Officer Blyberg, as a back-up vehicle, failed to assume responsibility for radio communications and followed the lead vehicle too closely, thereby allowing himself to become too directly involved in the pursuit.

{¶ 5} The Court of Claims entered judgment in favor of the Ohio State Highway Patrol, finding that the patrol's actions were not willful or wanton and, therefore, under R.C. 2744.02, the patrol was immune from liability. In so finding, the Court of Claims relied on *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 573 N.E.2d 1063. The court of appeals reversed the decision and remanded the cause to the Court of Claims, holding that the patrol could be held liable to appellees under a negligence standard.

{¶ 6} This cause is now before this court pursuant to the allowance of a motion to certify the record.

_____

*Becker, Reed, Tilton & Hastings* and *Dennis A. Becker*, for appellees.

*Betty D. Montgomery*, Attorney General, *Gregg H. Bachmann* and *Catherine M. Cola*, Assistant Attorneys General, for appellants.

*Paul L. Cox*, urging reversal for *amicus curiae*, Fraternal Order of Police of Ohio, Inc.

*Schottenstein, Treneff & Williams* and *John Gilchrist*, urging reversal for amicus curiae, Ohio Association of Chiefs of Police.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 7} The sole issue before this court is whether the State Highway Patrol is immune from liability in the absence of wanton or willful misconduct for injuries caused by a patrol officer in the operation of his vehicle while responding to an emergency call. For the following reasons, we find that the State Highway Patrol is immune from liability in the absence of willful or wanton misconduct and, accordingly, we reverse the court of appeals' judgment.

{¶ 8} In *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 573 N.E.2d 1063, this court determined that if an officer-employee of the State Highway Patrol inflicts injury upon an individual while the officer is operating a motor vehicle during an emergency, and that injury is the result of the officer's negligence, the agency is immune from liability pursuant to R.C. 2744.02. However, R.C. Chapter 2744, which is applicable only to political subdivisions, is not applicable to the State Highway Patrol as an agency of the state of Ohio. Both R.C. 2743.01(A) and 2744.01(H) provide that "state" does not include "political subdivisions." Thus, while we agree with the judgment in *York*, we find that it does not fully or finally address the State Highway Patrol's liability in the present case.

{¶ 9} This case was brought against the State Highway Patrol, an agency of the state, pursuant to R.C. Chapter 2743. The Ohio General Assembly enacted R.C. 2743.02 in 1975 as part of the Court of Claims Act. R.C. 2743.02(A)(1) reads as follows:

"The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims created in this chapter

in accordance with the same rules of law applicable to suits between private parties, except that the determination of liability is subject to the limitations set forth in this chapter ***."

{¶ 10} In order for plaintiffs to impose liability upon the state pursuant to R.C. 2743.02, the state must have breached a duty owed to plaintiffs. *Reynolds v. State* (1984), 14 Ohio St.3d 68, 72, 14 OBR 506, 510, 471 N.E.2d 776, 780 (Holmes, J., dissenting).

{¶ 11} In the present case, the appellees seek to impose a negligence standard of care upon the state as this would be the applicable standard of care if the suit were brought between private parties. However, the very fact that the defendant is the State Highway Patrol, and not a private party, changes the standard of care as private parties are not afforded the same rights and duties as patrol troopers. The State Highway Patrol, unlike private parties, is under a legal duty to pursue fleeing lawbreakers. See R.C. 5503.02(A). In performing this duty for the public, the State Highway Patrol is permitted to take greater risks which would amount to negligence if carried out by private citizens with no emergency duty to perform. See R.C. 4511.24. Thus, liability cannot be determined by "the same rules of law applicable to suits between private parties." See R.C. 2743.02(A)(1). Furthermore, this action did not result from the state's breach of a specific duty owed to plaintiff but, rather, from a duty owed to the public in general to enforce the laws. Thus, liability under R.C. Chapter 2743 cannot be imposed since the action did not result from the breach of a duty owed to the particular plaintiff. See *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, paragraph two of the syllabus.

{¶ 12} In determining whether liability can be imposed upon patrol troopers on an emergency call, we find it persuasive that the General Assembly has exempted all county, city and township police officers on an emergency call from liability when there is no evidence of willful or wanton misconduct. See R.C.

4

2744.02(B)(1)(a). It would be illogical and unfair to subject state troopers to greater liability than all other officers in the state performing the same duties in the public interest. Patrol troopers have been given the same law enforcement responsibilities and duties as other officers in the state. State patrol troopers are "law enforcement officers" as that term is used in R.C. 2901.01(K)(1) and "peace officers" as that term is used in R.C. 2935.01(B). Furthermore, patrol troopers, like other officers, are sworn to enforce the laws of the state of Ohio and have arrest and search and seizure powers. See, *e.g.*, R.C. 5503.01, 5503.02(A), 5503.02(D)(1), and 5503.02(E)(3). As this case demonstrates, patrol troopers often work in cooperation with other officers in the state in pursuing fleeing suspects. Accordingly, public policy dictates that a trooper responding to an emergency call be cloaked with the same level of immunity as every other peace officer who might also be responding to that call.

{¶ 13} Finally, a finding that patrol troopers are immune from liability in the absence of willful or wanton misconduct also serves a vital public interest. Patrol troopers have the duty to preserve the public peace, safety, and welfare. R.C. 5503.01 and 5503.02. Patrol troopers are expected to act promptly in emergency situations in order to protect the public. If troopers were held to a higher standard of care than other officers in pursuit of a suspect, they might hesitate for fear that the pursuit could result in potential liability. Thus, the goal of promoting patrol troopers' prompt action in emergency situations will be furthered by a finding that the State Highway Patrol is immune from liability. See *Fish v. Coffey* (1986), 33 Ohio App.3d 129, 130, 514 N.E.2d 896, 898.

{¶ 14} Based on the foregoing, we conclude that, in the absence of willful or wanton misconduct, the State Highway Patrol is immune from liability for injuries caused by a patrol officer in the operation of his vehicle while responding to an emergency call.

{¶ 15} The judgment of the court of appeals is reversed and the judgment of the Court of Claims is reinstated.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

PFEIFER, J., dissents.

———————————

**PFEIFER, J., dissenting.**

{¶ 16} Hot pursuit. The high speed chase. As comfortable to our perception of good law enforcement as fireworks and parades are on the Fourth of July. From images of posses on horseback chasing cattle rustlers to G-men in open air motorcars pursuing gangsters, the chase seems like such an integral part of catching criminals that the benefits of its widely accepted practice are seldom questioned.

{¶ 17} This should not be so. Unlike the days when criminals fled on horseback through sparse country, today's high speed chases are carried out on crowded public highways in vehicles that top speeds of one hundred miles per hour. The danger posed to innocent bystanders and the police involved in hot pursuit often far outweighs any benefit derived from the chase.

{¶ 18} In this case, the State Highway Patrol troopers risked not only their own lives in pursuit of two teenage joy riders, but the lives of the teenagers and hundreds of motorists as well. And for what? This was not a kidnapping or a hostage held at knifepoint. The two offenders were not armed robbers, terrorists or escaped convicts. They were kids in a stolen car, and their crime did not warrant putting anyone's life in danger.

{¶ 19} The state has set speed limits for the public's safety. To recklessly exceed those speed limits inherently imperils anyone in the path of the chase.

{¶ 20} Movies and television have glamorized the chase. In fact, there is nothing glamorous about it. The high speed chase is the deadliest use-of-force

action employed in law enforcement. More people are killed each year by high 1-1 speed chases than by bullets from police weapons. Columbus Dispatch, August 10, 1993, at 1A.

{¶ 21} Understandably, a high 1-1 speed chase can take on a life of its own. An officer tries to pull over a vehicle, the vehicle speeds up a little. The officer accelerates to keep up with the offender, and before long, both are flying down the road at one hundred fifteen miles per hour.

{¶ 22} Despite its long-standing acceptance and the natural difficulty involved in breaking bad habits, this court should put the brakes on hot pursuit. At the very least, we should not be bending over backward to embrace the practice. R. C. Chapter 2743 and R.C. 4511.24 provide an incentive to State Highway Patrol troopers to refrain from negligent conduct during their high 1-1 speed chases. The majority decision effectively erases this incentive.

{¶ 23} To relieve the state and State Highway Patrol troopers from responsibility gives a tacit stamp of approval for hot pursuit. There may be some circumstances that warrant a high speed chase, but only as a last resort, not as a matter of course. Rather than justifying the practice of high speed chases and exonerating negligent conduct, our message should be clear: public safety is of greater import than the thrill of the chase.

{¶ 24} In addition to public policy considerations, the Revised Code also dictates that we should refrain from judicially immunizing the negligent conduct of State Highway Patrol troopers during a high 1-1 speed chase.

{¶ 25} Absent from the majority's analysis is any direct statutory authority supporting its conclusion that State Highway Patrol troopers are not liable for damages caused by their negligent operation of motor vehicles during pursuits. Instead, the majority examines the standard contained in R.C. Chapter 2744, which excuses municipal, township and county law enforcement officials from liability resulting from the operation of their motor vehicles in an emergency unless the

officials' conduct is willful or wanton. The majority then examines the portion of the Revised Code dedicated to the liability of state officials such as Highway Patrol troopers, R.C. Chapter 2743, which contains no exception to liability as R.C. Chapter 2744 does. The majority creates an exception to the state's waiver of sovereign immunity and holds State Highway Patrol troopers to be liable for the improper operation of their motor vehicles only when they do so in a willful or wanton manner.

{¶ 26} The majority cites R.C. 4511.24 -- a statute that relieves emergency vehicles from the obligation to follow speed limits -- when it states that the "State Highway Patrol is permitted to take greater risks which would amount to negligence if carried out by private citizens with no emergency duty to perform." This conclusion completely ignores the disclaimer in R.C. 4511.24 that provides:

"This section does not relieve the driver of an emergency vehicle or public safety vehicle from the duty to drive with due regard for the safety of all persons using the street or highway."

{¶ 27} R.C. 4511.24 is intended to discharge emergency and safety vehicles from claims rooted in *per se* negligence. The statute does not immunize State Highway Patrol troopers when they negligently cause injury to the innocent.

{¶ 28} The majority contends that the statutory negligence standard applicable to State Highway Patrol troopers is logically inconsistent with the statutory willful-and-wanton standard applicable to municipal, township and county officers. I disagree. The individual being chased by a municipal, township or county officer is more likely to be a dangerous criminal that *may* merit vigorous pursuit. Thus, the General Assembly has provided local law enforcement officials with more deference.

{¶ 29} In this case, there is sufficient evidence that the State Highway Patrol troopers acted negligently. The State Highway Patrol's own assessment of Trooper Blyberg's conduct concluded that, during the high speed chase that traveled as fast

as one hundred fifteen miles per hour, Blyberg "failed to maintain a safe distance" behind Trooper McKinney's lead car. The internal report went on to conclude that "[h]is actions were not within Patrol Policy, Procedures, Rules and Regulations, including but not limited to 00-9-200.06-01, Motor Vehicle Pursuits."

{¶ 30} Statutes and statistics dictate that State Highway Patrol is liable when its troopers' negligently conducted high 1-1 speed chases result in injury. Accordingly, I respectfully dissent.

————————————