[Cite as *Dunlap v. Dept. of Pub. Safety*, 2018-Ohio-1501.]

| | |
|---|---|
| CINDY L. DUNLAP | Case No. 2016-00302 |
| Plaintiff | Magistrate Robert Van Schoyck |
| v. | DECISION OF THE MAGISTRATE |
| OHIO DEPARTMENT OF PUBLIC SAFETY, et al. | |
| Defendants | |

{¶1} Plaintiff brought this action arising out of an April 17, 2014 motor vehicle accident in Allen County involving herself and State Highway Patrol Trooper Adam T. Hauenstein. (Pursuant to R.C. 5503.01, the State Highway Patrol is a division of defendant, Ohio Department of Public Safety.) Plaintiff, claiming that the accident and her resulting injuries were caused either by negligence or willful or wanton misconduct on the part of Hauenstein, sought relief from the state under a theory of respondeat superior.

{¶2} As set forth in the court's entry of March 13, 2017, ruling on defendants' first motion for summary judgment, it was established that at the time of the accident Hauenstein was responding to an emergency call to render assistance at another accident scene. In *Baum v. State Hwy. Patrol*, 72 Ohio St.3d 469 (1995), syllabus, the Supreme Court of Ohio held that "[i]n the absence of willful or wanton misconduct, the State Highway Patrol is immune from liability for injuries caused by a patrol officer in the operation of his vehicle while responding to an emergency call." Defendants argued both in their first motion for summary judgment and more extensively in a second motion for summary judgment that they are immune from any liability whatsoever under the public duty rule set out in R.C. 2743.02(3)(a), but the court adhered to *Baum*. The court concluded that defendants were entitled to partial summary judgment on the

claims of negligence and willful misconduct, but that genuine issues of material fact remained for trial on the claim of wanton misconduct. The issues of liability and damages were subsequently bifurcated by agreement of the parties and the case proceeded to trial on the issue of liability.

{¶3} At trial, plaintiff testified that when the accident occurred she had just left her place of employment in Lima and was driving eastbound on Bluelick Road toward Interstate Route 75 (I-75), heading to her home in Findlay. As far as plaintiff could recall, it was a sunny afternoon. Plaintiff stated that westbound traffic on Bluelick Road was very heavy with trucks or other large vehicles. According to plaintiff, she stopped at a stop sign at an intersection on Bluelick Road, and then continued east toward the next intersection, with Wolfe Road. Plaintiff testified that she approached the Wolfe Road intersection with caution due to the heavy traffic in the opposite lanes, which obscured her view of Wolfe Road. The speed limit on Bluelick Road in this area was 55 miles per hour, plaintiff stated, but she was moving at about 30 to 35 miles per hour when she neared the Wolfe Road intersection.

{¶4} Plaintiff related that when she got to the Wolfe Road intersection, Trooper Hauenstein's patrol car suddenly emerged from between two large vehicles and pulled into the path of her vehicle, with which it immediately collided. As plaintiff described, the accident happened so quickly that she did not have an opportunity to hit her brakes or take other evasive action, nor did it seem to her that Hauenstein took evasive action, and she stated that she did not hear a siren or see any emergency lights.

{¶5} Plaintiff testified that the impact of the collision pushed her vehicle into the guardrail and the vehicle was rendered a total loss. Plaintiff recounted that she sustained injuries to her neck and back, a fractured nose, burns on her right arm and thumb from the airbag, and bruising on her chest from the airbag. Plaintiff stated that Hauenstein spoke to her after the accident and explained that he had been headed to another accident scene to see if he could render aid.

{¶6} Trooper Adam T. Hauenstein testified that he has been employed with defendant as a trooper for six years and that he works out of defendant's Lima Post.  As part of his job duties, Hauenstein stated, he is responsible for responding to the scenes of automobile accidents for several reasons, including rendering the scene safe by strategically positioning his patrol car or setting flares, determining injuries and rendering first aid, taking photographs and field sketches as part of an investigation, and making arrests if needed.  Hauenstein stated that until he arrives at an accident scene, he oftentimes does not know what will be required of him.

{¶7} According to Hauenstein, in the time leading up to the accident with plaintiff he had been traveling southbound on I-75 and exited at Bluelick Road, onto which he made a right turn and began traveling westbound.  Hauenstein stated that he then received notification of an accident on I-75 in which a motorist had been ejected from a vehicle.  At that time, Hauenstein related, he decided to initiate a U-turn at the intersection of Bluelick Road and Wolfe Road so that he could head back on eastbound Bluelick Road toward I-75 and respond to that accident.

{¶8} Hauenstein recalled checking his rearview mirror to make sure there was no one directly behind him so that he could abruptly apply his brakes without risking a rear-end collision.  Hauenstein testified that he determined it was safe to do so and he started to turn around in the intersection.  By Hauenstein's account, he then made sure there was no one coming toward him on Wolfe Road.  Hauenstein stated that there was a school bus making a right turn from southbound Wolfe Road onto westbound Bluelick Road, and the westbound traffic on Bluelick Road ahead of the school bus was heavy as it approached the other intersection that was just 200 to 300 yards beyond the Wolfe Road intersection.  Hauenstein testified that as the school bus made the turn and got in line behind the heavy westbound traffic, it obstructed his view of the oncoming eastbound traffic on Bluelick Road.  Hauenstein stated that even though his view was limited by the bus, he looked as far as he could to determine if there were any

approaching eastbound vehicles, and, seeing none, he thought that it was safe to complete the turn. When he attempted to do so, however, his patrol car collided with plaintiff's vehicle, Hauenstein stated. Hauenstein acknowledged that the accident occurred through no fault on the part of plaintiff. Hauenstein testified that he checked to make sure plaintiff was OK and he spoke to her, including explaining that he had been headed to another accident scene.

{¶9} On cross-examination Hauenstein was asked if he "would agree that the probability of harm to other drivers is great when you make a U-turn into oncoming traffic without lights on" and if he "knew this on the day of the accident." Hauenstein answered in the affirmative, but upon redirect he stated that in this case he did not appreciate such a degree of risk at the time, as he saw no vehicles coming at him in any direction for as far as he could see and he thought he could proceed safely.

{¶10} Regarding his emergency lights, Hauenstein stated that the whole sequence of events transpired so quickly that he did not get an opportunity to activate the lights prior to the accident. And, Hauenstein explained, troopers are permitted under State Highway Patrol policy to make a U-turn without activating their emergency lights.

{¶11} As stated above, this matter was tried on the issue of liability on plaintiff's claim of wanton misconduct. The Supreme Court of Ohio has defined wanton misconduct as follows:

> a. Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result. *Hawkins* [*v. Ivy*], 50 Ohio St.2d [114,] 117-118, 363 N.E.2d 367; see also *Black's Law Dictionary* 1613-1614 (8th Ed.2004) (explaining that one acting in a wanton manner is aware of the risk of the conduct but is not trying to avoid it and is indifferent to whether harm results).

*Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, ¶ 33. "To constitute wanton misconduct, the defendant must recognize this great probability of harm." *Blair*

*v. Columbus Div. of Fire*, 10th Dist. Franklin No. 10AP-575, 2011-Ohio-3648, ¶ 29; *see also Hunter v. Columbus*, 139 Ohio App.3d 962, 969 (10th Dist.2000).

{¶12} One who is attempting to prove wanton misconduct need not show "'that an injury be intended or that there be any ill will on the part of the actor toward the person injured as a result of such conduct.'" *Buckeye Union Ins. Co. v. New England Ins. Co.*, 87 Ohio St.3d 280, 286 (1999), quoting *Tighe v. Diamond*, 149 Ohio St. 520, 526 (1948). Wanton misconduct is different from willful conduct or reckless conduct, all being distinct degrees of care that are not interchangeable. *Anderson* at ¶ 3. In comparison, "[w]illful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury"; "[r]eckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at ¶ 32, 34.

{¶13} "Wanton misconduct has been likened to conduct that manifests a 'disposition to perversity,' but the Supreme Court abandoned 'disposition to perversity' as an element of the definition of wanton misconduct in *Hawkins v. Ivy*, 50 Ohio St.2d 114, 363 N.E.2d 367 (1977)." *Rondy v. Richland Newhope Indus., Inc.*, 5th Dist. Richland No. 15 CA 45, 2016-Ohio-118, ¶ 44, citing *Anderson* at ¶ 28. Rather, as stated above, "wanton misconduct involves the failure to exercise 'any care' toward those to whom a duty of care is owed if the circumstances are such that there exists a 'great probability' that harm will result." *Stevens v. Maxson*, 10th Dist. Franklin No. 12AP-672, 2013-Ohio-5792, ¶ 31, citing *Anderson* at ¶ 33. The standard for wanton misconduct is "rigorous" and "will in most circumstances be difficult to establish * * *." *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, ¶ 8.

{¶14} "Whether the 'any care' standard is met is a fact-specific determination." *Williams v. Columbus*, 10th Dist. Franklin No. 16AP-269, 2016-Ohio-7969, ¶ 20. Accordingly, when analyzing whether an actor responding to an emergency call engaged in wanton misconduct, "a court must evaluate each situation on its own unique facts and all of the circumstances existing at the time." *Herron v. Columbus*, 10th Dist. Franklin No. 14AP-1063, 2016-Ohio-503, ¶ 11. The Tenth District Court of Appeals has cautioned against using a simplistic analysis in such cases, since the 'any care' standard is not automatically met "merely by turning on lights and siren, using brakes, or looking where one is going." *Williams* at ¶ 20; *see also Robertson v. Dept. of Pub. Safety*, 10th Dist. Franklin No. 06AP-1064, 2007-Ohio-5080, ¶ 19, quoting *Hunter*, 139 Ohio App.3d at 970 ("Simply activating one's lights and siren, looking where one is going, or applying one's brakes 'meets the literalistic, but not legal, definition of "any care."'"). In *Hunter*, for example, the appeals court reversed the trial court's award of summary judgment because even though an operator of an emergency vehicle had his lights and siren on, he otherwise engaged in conduct that was "extreme" enough, including going left of center at 26 miles per hour above the speed limit, that on the whole a trier of fact could view it as wanton misconduct. *Hunter* at 970-971.

{¶15} Upon review of the evidence presented at trial, the magistrate finds as follows. On the afternoon of April 17, 2014, Hauenstein was on westbound Bluelick Road approaching the intersection with Wolfe Road when he was notified of a serious accident on I-75 involving a motorist ejected from a vehicle. As part of his job duties, Hauenstein is responsible for responding to accident scenes to render first aid and perform other functions. Hauenstein decided to turn around at the Wolfe Road intersection and head back on eastbound Bluelick Road toward I-75. Bluelick Road is the southern terminus of Wolfe Road. Hauenstein took care to look in his rearview mirror to make sure that it would be safe for him to abruptly slow down at the intersection. There was no one coming behind him, and he then looked and determined

that there was no one coming toward him from Wolfe Road either.  Hauenstein slowed down and began making the turn and looked for any traffic approaching on eastbound Bluelick Road.  Hauenstein could not see very far in that direction due to a school bus that turned right from southbound Wolfe Road onto westbound Bluelick Road, where it stopped behind a long line of vehicles.  Hauenstein, having looked as far as he could see in all directions at the intersection, felt that it was safe to proceed with the turn, but as he did so his patrol car collided with plaintiff's eastbound vehicle.  Neither driver saw the other in time to avoid the collision.

{¶16} Careful consideration of the evidence demonstrates that although Hauenstein was at fault in causing the accident, his actions did not rise to the level of wanton misconduct.  Hauenstein looked in all directions and did not see any oncoming traffic, and he credibly testified that he felt it was safe to proceed, such that he did not act with an awareness that his conduct would in all probability result in injury.  Although the presence of the school bus prevented Hauenstein from seeing very far when he looked for eastbound motorists, the daytime conditions were otherwise clear and dry and did not present any impediments to seeing oncoming traffic and the approaches in all directions were apparently flat and lacked other features that would obstruct his view.  Hauenstein also proceeded with the turn at a low rate of speed that mitigated the risk to others.  By contrast, in *Robertson* a State Highway Patrol trooper acted in a wanton manner when he entered an intersection against a red light at over 70 miles per hour, negating his ability to prevent a crash and creating a situation in which any crash would result in major damage, all while aware of the distinct possibility that another motorist would enter his path.  *Robertson* at ¶ 25.  Hauenstein also seems to have proceeded more cautiously than the police officer in *Williams*, in which it was determined that issues of material fact existed on the question of wanton misconduct where the officer made a sudden U-turn across four lanes of traffic at 20-25 miles per hour even though

his view of oncoming traffic was screened by vehicles queued to make left turns. *Williams* at ¶ 22.

{¶17} This section of Bluelick Road had a 55 mile per hour speed limit, but there is some doubt whether eastbound motorists were likely to actually travel at that speed here when they had to stop at a stop sign at a prior intersection as close as 200 yards away, and indeed plaintiff's rate of speed was 30 to 35 miles per hour. And, while there was a long line of vehicles ahead of the school bus on westbound Bluelick Road, traffic on eastbound Bluelick Road was not so heavy. Rather than attempting a U-turn at an unpredictable random location, Hauenstein made the turn at the intersection with Wolfe Road, a place where it was normal for drivers to make left turns onto eastbound Bluelick Road, consistent with plaintiff's testimony that she used some caution when nearing the intersection. It also seems that rather than turning in a tight U-shaped pattern in the middle of Bluelick Road, Hauenstein used the expanse of the intersection and initially turned "onto Wolfe Road" such that the trajectory by which he attempted to turn from Wolfe Road onto eastbound Bluelick Road was more predictable for the intersection.

{¶18} Although Hauenstein did not have his emergency lights activated at the time of the accident, it does not appear that the lights would have enabled plaintiff to see the patrol car any sooner, and, furthermore, State Highway Patrol policy did not require that the lights be activated. Considering Hauenstein's actions as a whole when entering the intersection and making the turn, he exercised some care toward other motorists, and even though he could not see very far into the eastbound lane of Bluelick Road and did not have his emergency lights on, his conduct was not so extreme as to "negate or eliminate the significance of the care he did exhibit." *Glenn v. Columbus*, 10th Dist. Franklin No. 16AP-15, 2016-Ohio-7011, ¶ 24.

{¶19} The magistrate is not without compassion for the injuries and suffering that plaintiff went through as a result of this accident. There is no dispute that the accident was not plaintiff's fault, and defendants acknowledged at trial that Hauenstein's actions

were negligent. But, for the state to be liable in this case it had to be proven that Hauenstein's actions rose to the degree of wanton misconduct. In the final analysis, that high standard was not met, as the totality of the evidence does not establish a 'failure to exercise any care' on the part of Hauenstein.

{¶20} Based on the foregoing, the magistrate finds that plaintiff failed to prove her claim by a preponderance of the evidence. Accordingly, judgment is recommended in favor of defendants.

{¶21} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

ROBERT VAN SCHOYCK
Magistrate

cc:

Gordon D. Evans, II
495 South High Street, Suite 300
Columbus, Ohio 43215

Brian M. Kneafsey, Jr.
Peter E. DeMarco
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed January 18, 2018**
**Sent to S.C. Reporter 4/19/18**